NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0989n.06
Filed: December 20, 2005

No. 04-3908

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


| | | |
|---|---|---|
| AHLAAM YOUSEF MATTE, KHZEL JAMEEL YOUSIF, and SAOHAN KHZEL JAMEEL, | ) ) ) | |
| *Petitioners-Appellants*, | ) ) | ON PETITION FOR REVIEW OF A DECISION OF THE BOARD OF IMMIGRATION |
| v. | ) ) | APPEALS |
| ALBERTO GONZALES, Attorney General, | ) ) ) | |
| *Respondent-Appellee*. | ) ) | O P I N I O N |


BEFORE:   DAUGHTREY and COLE, Circuit Judges, and BARZILAY, Judge[*]

**R. GUY COLE, JR., Circuit Judge.**  The petitioners seek review of a final order of the

Board of Immigration Appeals (BIA) dismissing the petitioners' appeal of the Immigration Judge's

(IJ) denial of their application for asylum.  For the following reasons, we **DENY** the petition for

review.

**I.**

Lead petitioner Khzel Jameel Yousif ("lead petitioner," or "Yousif"), his spouse Ahlaam

Yousef Matte, and their son Saohan Khzel Jameel (collectively, "the petitioners"), are natives and

citizens of Iraq.  They identify their ethnicity as Chaldean and their religion as Christian.  According

---

[*] The Honorable Judith M. Barzilay, Judge of the United States Court of International Trade, sitting by designation.

to State Department reports, Christians comprise less than three percent of the Iraqi population, and Chaldean Christians comprise a smaller subset of that percent. At the time the petitioners last resided in Iraq, political power rested in the Arab Ba'ath Socialist Party, controlled by Saddam Hussein and his family.

In April 2001, the petitioners left Iraq with the intent to relocate to the United States. The petitioners traveled first to Jordan, Ecuador, Guatemala, and Mexico before entering the United States in December 2001 and requesting asylum. The Immigration and Naturalization Service (now the Department of Homeland Security, both referred to hereinafter as the "Service") initiated removal proceedings within a week of the petitioners' arrival, and the petitioners admitted they had arrived as aliens and were subject to removal but requested the opportunity to file an application for asylum, request for withholding of removal, and request for relief under the Convention Against Torture.

The applications were consolidated into the lead petitioner's application and a hearing was conducted on April 29, 2003. The following facts were established through Yousif's written asylum application and hearing testimony: Yousif was granted refugee status in the United States in 1976 because of fear of the Ba'ath political party then in power in Iraq, but eleven months after obtaining asylum returned to Iraq to get married. Yousif again visited the United States in 2000 for fifty-nine days, but returned to Iraq without seeking permission for a longer stay. Yousif's 2001 application for asylum describes "mistreatment, harm, and threats throughout [his] life in Iraq because of [his] religion and race." Yousif was jailed for over a month in 1991 for allegedly "bad mouthing" Saddam Hussein. The incident arose when a cousin of Hussein arrived at Yousif's restaurant and

physically assaulted the workers. The next day Yousif arrived at his restaurant to find it surrounded by men with machine guns who took Yousif and his employees away in trucks. When Yousif asked why he and his employees were being detained, he was cursed at and told that they had insulted the president. After over a month, Yousif and his workers were transported to another facility where they were searched and told that Hussein was releasing them. Yousif said the release was characterized as an amnesty for those imprisoned for political reasons, but he disclaims doing or saying anything to insult Hussein. Upon his release from prison, Yousif decided to close his restaurant.

Approximately seven years later, Yousif opened a liquor store. Yousif's application for asylum claims that he was routinely called upon to supply free liquor to the Iraqi police. Yousif testified that on one occasion a captain with three stars on his shoulder demanded a free bottle of whiskey and instructed Yousif to report to the station the next day. When Yousif arrived at the station, it was indicated to him that his supply of free liquor was expected to become routine. In or around July 2000, on a day when Yousif's store was closed, a cousin of Hussein and a second, large man came to Yousif's home demanding alcohol. When Yousif refused to serve them because of legal restrictions on liquor sales, the official struck him and one of the men pointed a gun at Yousif and threatened to shoot him. The altercation ended with the two men laughing and leaving. The incident was witnessed by Yousif's son. Yousif also testified that his liquor store was burned down in November 2000. He indicated that the police performed a cursory investigation. Yousif presented no evidence concerning who started the fire, but testified, "I don't know if it was the

government or Islam. But mostly I would think it was because of Islam." When asked why he believed this, he responded "because they hate us as Christians in general."

After the fire Yousif sold his liquor license and what remained of his store. Yousif did not mention this incident in his asylum application, and when asked the reason, explained that he did not include every incident on his application because he expected to elaborate when he came to court. Yousif's testimony also included a description of health problems and mobility limitations, his concern that his children would be forced to serve in the Iraqi military, his brother's imprisonment on a firearms charge arising apparently from self-defense to an assault by guards, Yousif's generalized fear of the majority Islamic community, and Yousif's second-hand account of a recent Muslim attack upon a Chaldean Christian home.

Between the time of the petitioners' departure from Iraq in April 2001 and the time of their asylum hearing in April 2003, Iraq underwent a dramatic regime change. At the hearing, neither Yousif nor the Service introduced written documentation of current events in Iraq. The IJ asked whether the Service had information on "the fall of the regime, which is critical to this application," and the Service responded that it assumed judicial notice would be taken of those events. In its cross-examination of Yousif, the Service asked why he could not return to Iraq now that Hussein's government was no longer in power. Yousif first expressed a desire to stay with his siblings in the United States, described his physical disability and lack of economic resources in Iraq, and then expressed a generalized fear of the Shi'a Muslim majority and the type of new government that would be imposed.

The IJ delivered an oral decision denying petitioners' application for asylum and withholding of removal, and denying their requests for relief under the Convention Against Torture. The IJ's detailed opinion stressed inconsistencies between Yousif's testimony and application, and suggested that the testimony was embellished. The IJ took judicial notice of the fall of Saddam Hussein's regime, the power vacuum in Iraq, and the two-thirds majority of Shi'a Muslims, but noted Yousif's failure to provide documentary evidence of Shiite attacks on Christians or significant enmity between the two groups. The IJ concluded that the recent regime change eliminated the grounds for Yousif's alleged fear of persecution, and that there was no objective evidence in the record to support a fear of persecution from the Shiite majority. In evaluating the significance of Yousif's claims of past persecution, the IJ stressed Yousif's voluntary returns to Iraq in 1976 and 1990 as well as the lengthy stretches of time when Yousif lived in Iraq without incident. The IJ also observed that no conclusions could be reached regarding the cause of the store fire and therefore this incident could not support a claim of persecution. The IJ concluded that, having failed to meet the necessary burden for an asylum claim, Yousif also failed to meet the burden for withholding of removal, and likewise failed to establish likelihood of torture that would provide relief under the Convention Against Torture.

The petitioners filed a timely appeal with the BIA, and the BIA concurred with the IJ and dismissed their appeal. In a brief opinion, the BIA rejected the IJ's suggestion that Yousif was not credible, but nevertheless found that the harm suffered on account of the family's Chaldean ethnicity and Christian religion constituted discrimination and harassment but not persecution. The BIA found that Yousif's detention for one month was not on account of his ethnicity or religion, and that

the forced provision of free liquor to officials was nothing more than petty corruption. Finally the BIA took notice that "Saddam Hussein has been removed from power, an international coalition of forces currently has control and sovereignty will soon pass to Iraqis," and concluded that Yousif and his family had no objective basis for fearing future harm in Iraq.

This timely appeal followed from the BIA's decision. The petitioners argue on appeal that the denial of their asylum claim was not supported by substantial evidence, that their due process rights were violated by the BIA's taking notice of changed conditions, and that a remand is warranted because recent events in Iraq have rendered the administrative record stale.

**II.**

**A. Standard of review**

This Court has jurisdiction to review final orders of removal by the BIA under 8 U.S.C. § 1252(a)(1). The standard for reviewing the BIA's factual findings is deferential: factual findings are conclusive, unless the court determines that the evidence is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). The BIA's determination must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Id.* This Court cannot reverse a BIA determination simply because it would have decided the matter differently; rather, this Court can only reverse if the evidence presented by Yousif not only supports a contrary conclusion, but indeed compels it. *Mikhailevitch v INS*, 146 F.3d 384, 387 (6th Cir. 1998).

Under the Immigration and Nationality Act ("INA"), the Attorney General has the discretion to grant asylum to applicants who demonstrate that they are "refugees." 8 U.S.C. § 1158(b)(1). If

an applicant demonstrates that she is a refugee under the meaning of the INA, she may obtain a grant

of asylum only if she further demonstrates that she "merits a favorable exercise of discretion by the

Attorney General." *Mikhailevitch*, 146 F.3d at 389.

A "refugee" is a person unwilling or unable to return to her country "because of persecution

or a well-founded fear of persecution on account of race, religion, nationality, membership in a

particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). An applicant must

demonstrate that she either has suffered past persecution, or has a well-founded fear of future

persecution, on account of one of these five protected grounds. 8 C.F.R. § 208.13(b). "Persecution

is an extreme concept that does not include every sort of treatment our society regards as offensive."

*Ali v. Ashcroft,* 366 F.3d 407, 410 (6th Cir. 2004) (quoting *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th

Cir. 1995) (internal quotation marks omitted)). Harassment or discrimination without more does not

rise to the level of persecution, particularly when limited to a few isolated incidents of verbal

harassment or intimidation. *Gilaj v. Gonzales*, 408 F.3d 275 (6th Cir. 2005); *Ali*, 366 F.3d at 410;

*Mikhailevitch*, 146 F.3d at 389-90 (6th Cir. 1998). A petitioner also cannot demonstrate persecution

merely by showing she was the victim of a random crime or indiscriminate abuse. *Gilaj*, 408 F.3d

at 285. However, "persistent death threats and assaults on one's life, family, and business" have

been held to rise to the level of persecution. *See Ouda v. INS*, 324 F.3d 445, 454 (6th Cir. 2003)

(quoting *Andriasian v. INS*, 180 F.3d 1033, 1042 (9th Cir. 1999)).

**B. Past Persecution**

If an asylum applicant establishes past persecution, a presumption of a well-founded fear of

future persecution arises, which the Service may rebut by establishing upon a preponderance of

evidence that country conditions have changed in such a manner as to negate the particular alien's well founded fear of being persecuted. 8 C.F.R. § 208.13(b)(1)(I); *Ouda*, 324 F.3d at 452. The BIA characterized some of the harms suffered by Yousif as not being on account of any of the five protected grounds, and characterized other harms as not rising to the level of persecution. The petitioners challenge both of these findings, and claim that the evidence compels a conclusion that they have suffered harms on account of their religion and their political opinions, and that these harms rise to the level of persecution. The petitioners' argument fails on both grounds.

The record does not contain any indication that in the course of Yousif's capture and detention there was any mention by the authorities of Yousif's religious beliefs or ethnicity. The petitioners argue that this detention must be viewed in context, and that religious motivation can be inferred from the pattern of events experienced by Yousif. However, the record does not reflect a pattern, but rather a few isolated incidents over several decades of life in Iraq, coupled with Yousif's perception that Chaldean Christians are hated. These facts do not compel an inference of religious or ethnic persecution. The petitioners also assert on appeal that Christian Iraqis "routinely suffer the same sorts of treatment experienced by the petitioners." There is no evidence in the administrative record to support this assertion, and the evidence introduced in the petitioners' appellate brief cannot be considered by this Court. 8 U.S.C. § 1252(a)(1) (providing reviewing court cannot take additional evidence); *id.* § 1252(b)(4)(A) (limiting judicial review to administrative record upon which removal order is based).

On appeal, the petitioners argue that Yousif's detention constituted persecution for Yousif's political opinion, specifically his perceived opposition to the Ba'ath party, and the petitioners

attempt to tie Yousif's 1991 arrest to whatever political grounds formed the basis of Yousif's successful 1976 asylum application. The record does not compel this conclusion. Yousif's testimony instead suggests that his 1991 arrest was arbitrary and not founded upon a perception of Yousif's particular political beliefs. Yousif's employees were already surrounded by armed soldiers when Yousif arrived, and Yousif has explicitly disclaimed doing or saying anything in opposition to the Hussein regime. Yousif's arbitrary arrest and detainment by a corrupt regime, although clearly unjust, cannot, standing alone, satisfy the requirements for asylum. *Gilaj*, 408 F.3d at 285; *see also Namo v. Gonzales*, 401 F.3d 453, 457 (6th Cir. 2005) (upholding denial of asylum where applicant's arrest was motivated by his refusal to cooperate with the Iraqi government and not by particular political belief).

Similarly, the evidence on record does not compel a conclusion that the Iraqi police officers' demands upon Yousif for free liquor constitute persecution. The evidence does not suggest that these demands brought serious harm to Yousif or that they were motivated by one of the five protected grounds. The petitioners argue that the BIA should have considered these bribery demands in the proper social context, where Yousif's Chaldean Christian identity made him a more conspicuous target. But a reasonable adjudicator could also conclude that Yousif was a target simply because the soldiers wanted free liquor. The petitioners introduce evidence that liquor stores in Iraq are all Christian-run, and therefore common targets of anti-Christian violence. This evidence was not part of the administrative record and cannot be considered by this Court. 8 U.S.C. § 1252(a)(1); *id.* § 1252(b)(4)(A). Furthermore, such evidence would not compel a conclusion that

the officials who demanded bribes from Yousif were motivated by anti-Christian sentiment, as opposed to a desire for free liquor.

Consideration of the other harms suffered by Yousif and his family likewise does not compel a conclusion that Yousif has suffered past persecution. There is no evidence that Yousif's store was burned in order to target Yousif for ethnic, religious, or any other protected reason, or even that the fire resulted from arson. The arrest and imprisonment of Yousif's brother appears to be upon a firearms charge. Yousif's general fear of the Shi'a Muslim community likewise does not constitute persecution. Citing several Ninth Circuit cases, the petitioners argue that the experiences of Yousif's family considered cumulatively amount to persecution. The cases cited by the petitioners, *e.g., Korablina v. INS*, 158 F.3d 1038 (9th Cir. 1998), involved much harsher circumstances than those suffered by the petitioners. While it is true that this Court looks to the "overall context of the applicant's situation," *see Gilaj*, 408 F.3d at 285, the overall context here counsels against a finding of asylum eligibility. The petitioners remained in Iraq many months after the last incident of harm, and many years passed with no incident at all. Taken as a whole, the record reflects evidence of a difficult life in a volatile country, but does not compel a conclusion of past persecution.

## C. Fear of Future Persecution

Absent evidence of past persecution, an applicant may still receive asylum solely on the basis of a fear of future persecution by satisfying both an objective and subjective requirement. The petitioners must show that their fear is genuine and that a reasonable person in their circumstances would have a similar fear. *Namo*, 401 F.3d at 456. The applicant must "present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Perkovic v.*

*INS*, 33 F.3d 615, 621 (6th Cir.1994) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987)).

Yousif expressed his perception of mistreatment from both the Ba'ath party in power under Hussein and the Shi'a Muslim majority population. Regarding Yousif's fears of the Hussein regime, the BIA properly took notice of the fall of that regime. *See infra*, II.D. The petitioners argue that the change in regime does not guarantee safety from continued insurgencies by Hussein sympathizers. Nevertheless, fear of general conditions of violence and upheaval does not qualify an alien for asylum. *Perkovic*, 33 F.3d at 621.

The evidence does not compel a conclusion that Yousif's fears of the Muslim majority were objectively well-founded. The only evidence offered by Yousif is his hearsay account of a single attack upon a Chaldean Christian home, his uncorroborated speculation that Islamic fundamentalists burned down his store, and his general belief that Iraqi Muslims hate Chaldean Christians and will engage in a holy war against them. None of this compels a conclusion of a well-founded fear of future persecution.

In their brief, petitioners attempt to introduce substantial new evidence pertaining to recent violence targeted against Christians in Iraq. They cite *New York Times* articles from 2004 describing attacks upon Christian churches; the targeting of traditionally Christian-run businesses such as liquor stores, beauty salons, and stores selling Western music; and the flight of Christians from Iraq to Syria. They also cite a 2004 United Nations High Commissioner for Refugees advisory that strongly advises states to suspend the forced return of all Iraqi nationals. This Court cannot consider any of this new evidence in evaluating whether the BIA's decision was supported by substantial evidence.

*See* 8 U.S.C. § 1252(a)(1); *id.* § 1252(b)(4)(A).  We conclude that the BIA's opinion finding no well-founded fear of future persecution was substantially supported by the evidence contained in the administrative record.

**D.  Administrative Notice and Due Process**

The petitioners argue that the BIA violated their due process rights by taking notice of changed conditions in Iraq, depriving the petitioners of an opportunity to rebut this evidence.  Their due process argument fails.

Administrative notice is appropriate "only in situations involving commonly known facts . . . or the agency's expertise . . . ."  *Vasha v. Gonzales*, 410 F.3d 863, 874 n.5 (6th Cir. 2005); *see also Kaczmarczyk v. INS*, 933 F.2d 588, 593-95 (7th Cir. 1991) (BIA may take official notice of "uncontroverted facts"); *Llana-Castellon v. INS*, 16 F.3d 1093, 1097 (10th Cir. 1994) (BIA make take notice of facts that "are not subject to reasonable dispute and are easily verified").  The BIA did not err in Yousif's case by taking notice of such an incontrovertible fact as the fall of Hussein's regime.

Nevertheless, the petitioners argue that given the opportunity they would have presented evidence to rebut the presumption that the fall of Hussein's regime eliminated the basis for their well founded fear of persecution.  This argument fails because Yousif was clearly provided with the opportunity to rebut the argument that the change in the Iraqi regime improved his condition. Because the fall of Hussein's regime occurred before Yousif's hearing took place, Yousif could have reasonably anticipated the issue and thus he had the opportunity to gather new documentation and tailor his testimony in light of recent events before his removal hearing.  In cross-examination at his

hearing, the Service asked Yousif why he still did not feel safe returning to Iraq with Hussein out of power, and Yousif's response, that he feared the Shi'a regime that would likely be instituted, is on the record. Given the circumstances surrounding the BIA's administrative notice-taking, the petitioners' due process rights were not violated.

**E.  Recent Changed Conditions in Iraq**

The petitioners request in the alternative that we remand this case to the BIA to update the current record. As noted above, the petitioners' brief cites to several sources from 2004 that suggest a recent increase in Christian-targeted violence in Iraq. Indeed, several circuits have expressed concern over the increasingly common problem of global events outpacing the asylum review process, resulting in asylum decisions being affirmed on grossly outdated records. *See, e.g., Berishaj v. Ashcroft*, 378 F.3d 314 (3d Cir. 2004); *Sivaainkaran v. INS*, 972 F.2d 161, 165-66 (7th Cir. 1992). The petitioners call our attention to a new internal policy of the Department of Justice, described in detail in *Abartsoumian v. Ashcroft*, 388 F.3d 85, 95 (3d Cir. 2004), that attempts to address this problem by encouraging the government "as a matter of prosecutorial discretion" to screen out, and seek remand of, asylum cases whose records are out-of-date. The government has declined to exercise that discretion in the present case.

We determine that remand due to changed country conditions is inappropriate in the petitioners' case. Although we have recently asserted our ability to take judicial notice of clear changes in country conditions and remand for further proceedings, *Namo*, 401 F.3d at 458, we conclude that this case is not one involving such obviously changed conditions. While the fall of Hussein's regime is an incontrovertible fact, *see id.*, recognizing a recent increase in Christian-

targeted violence in Iraq requires a judgment as to severity and pervasiveness that is inappropriate for this Court to make.

The petitioners could more efficiently call the Service's attention to changes in Iraq warranting a grant of asylum if they use the administrative procedure designed for that purpose - the motion to reopen procedure described in 8 C.F.R. § 1003.2. The time limitations set forth in the section do not apply to petitions to reopen due to changed country conditions. *See* 8 C.F.R. § 1003.2(c)(3)(ii). We remind the petitioners, however, that such a motion would not automatically stay their deportation. *See* 8 C.F.R. § 1003.2(f).

## III.

For the foregoing reasons, we hereby **DENY** the petition for review.