*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0136p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HANI NAMO; REVANADA MAROGI NAMO; BAN
RAZOK; RITA HANI MAROGI NAMO; and RANA HANI
MAROGI NAMO,

          *Petitioners,*

     *v.*

ALBERTO GONZALES, Attorney General

          *Respondent.*

No. 03-4194

---

On Appeal from the Board of Immigration Appeals.
Nos. A79 565 991; A79 565 992; A79 565 993;
A79 565 994; A79 565 995.

Argued: November 30, 2004

Decided and Filed: March 17, 2005

Before: NORRIS and COOK, Circuit Judges; BECKWITH, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** Michael E. Piston, MICHAEL E. PISTON, P.C., Troy, Michigan, for Petitioners. Lyle
D. Jentzer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.
**ON BRIEF:** Michael E. Piston, Lila Sljivar, MICHAEL E. PISTON, P.C., Troy, Michigan, for
Petitioners. Lyle D. Jentzer, Christopher C. Fuller, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

ALAN E. NORRIS, Circuit Judge. Petitioners, Hani Namo and his family, appeal from the
decision of an immigration judge, which was affirmed by the Board of Immigration Appeals
("BIA"), denying their request for asylum, withholding of removal, and relief under the Convention
Against Torture. We hold that the immigration judge erred when he denied Namo relief under the
Convention Against Torture. However, because we take judicial notice of the changed
circumstances in Iraq, we remand to the BIA for further proceedings.

---

[*]The Honorable Sandra S. Beckwith, Chief United States District Judge for the Southern District of Ohio, sitting
by designation.

## I.

Namo, his wife, and their children are citizens of Iraq.  They were admitted to the United States in August 2000 with authorization to remain until December 8, 2001.  The United States charged the family with being removable under the Immigration and Nationality Act, § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the country longer than their visas permitted.  The Namos conceded their removability, but sought asylum, withholding of removal, and protection under the Convention Against Torture and other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT").

Namo testified before the immigration judge about the events that led him to flee Iraq and to request asylum and withholding of removal.  He owned a business in Iraq, which produced blast furnaces for melting steel and minerals.  In 1994, the Iraqi government contacted Namo to build a blast furnace, which  Namo agreed to produce.  He later learned that the Iraqi military intended to use the furnace for weapons production.  According to Namo's testimony, he did not "want to deal with these people because the way they deal with people is not normal . . . they pressure people, they arrest people . . . .  They threaten people."

Namo went on to relate that the Iraqi government wanted him to repair two other ovens, but he initially refused the work.  In response, the authorities threatened that they would "submit a report" about his lack of cooperation. Ultimately, Namo did correct a problem with the first oven.

In 1999, the Iraqi authorities again approached Namo with a big project.  He was told that he was "the only person in Iraq" with the experience to complete it.  Because he did not want to work for the Iraqi government, he told them that he needed time to study the project.  In January 2000, a government representative sought out Namo at his office and asked him if he had decided whether to accept the project.  Namo responded that the project was too big for him.

According to Namo, the following day three people came to his office and asked him to accompany them to "talk about the project."  As soon as he left his office, the men handcuffed him, blindfolded him, and began punching him. The Iraqi authorities detained him for two weeks, during which time he was beaten, forced to witness the rape of a woman, and threatened with the rape of his own wife.  Furthermore, the men who detained Namo accused him of being a member of an opposition party.  He denied the charges.  Namo finally agreed to assist with project, and he was released.

At this point, he contacted his relatives in the United States, who assisted him in applying for a visa to work temporarily in the United States. Under the pretext of purchasing supplies, Namo traveled to Jordan to have an interview for his visa at the American consulate.  During his absence, Iraqi authorities allegedly threatened his wife.  Namo returned to Iraq to await the results of the investigation of his visa by the American consulate.

Eventually, Namo received the visa.  In order to leave the country, he hired a "smuggler" who arranged for him and his family to receive exit visas from the Iraqi government that enabled them to cross into Jordan.  Namo left Iraq on August 6, 2000, without notifying the Iraqi government or completing the project.  Two months after Namo and his family arrived in the United States, a family member still living in Iraq informed them that the Iraqi government had issued a warrant for his arrest.  Namo testified that he believed that he would be executed if he returned to Iraq because he fled the country without permission and without having completed his contract with the government.

The Namos received notices to appear dated August 28, 2001, charging them with being removable from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B) because they were aliens

who had overstayed their visas.  The immigration judge determined that the family was deportable. The BIA affirmed the decision of the immigration judge without opinion.

## II.

Because the BIA affirmed the decision of the immigration judge without opinion, we review his decision directly.  *See Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).  The findings of fact of an immigration judge are conclusive unless a reasonable adjudicator would be compelled to conclude to the contrary.  8 U.S.C. § 1252(b)(4)(B).  The decision only need be supported by substantial evidence.  *See Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998).

The Attorney General has the discretion to grant asylum to any alien who is a "refugee."  *See* 8 U.S.C. § 1158(b)(1).  An applicant for asylum and withholding of removal must prove he is a refugee by demonstrating that he has been subject to past persecution or has a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group or political opinion.  *See* 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b).  If an applicant can demonstrate that he has been subjected to past persecution, he creates a rebuttable presumption of a well-founded fear of future persecution.  8 C.F.R. § 208.13(b)(1).  However, if there has been a fundamental change in circumstances in the applicant's country of origin "such that the applicant no longer has a well-founded fear of persecution," asylum shall be denied. 8 C.F.R. § 208.13(b)(1)(i)(A).  Alternatively, an applicant can receive asylum solely on the basis of a fear of future persecution by showing that his fear is genuine and that a reasonable person in his circumstances would have a similar fear.  *See Mikhailevitch*, 146 F.3d at 389.  In this situation, the applicant must "present evidence establishing an 'objective situation' under which his fear can be deemed reasonable."  *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994)(quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987)).

While the Attorney General has discretion to grant asylum, withholding of removal is mandatory if an alien can show that his life or freedom would be threatened under one of the five enumerated grounds of 8 U.S.C. § 1101(a)(42)(A).  8 U.S.C. § 1231(b)(3)(A); *see also Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004).  The alien bears the burden of showing a "clear probability" of such persecution.  *Id.*  The asylum standard is more lenient than that of withholding of removal.  *Id.* (citing *Mikhailevitch*, 146 F.3d at 391).  Therefore, failure to meet the standard for asylum precludes eligibility for withholding of removal.  *Mikhailevitch*, 146 F.3d at 391.

The immigration judge determined that, while Namo had been tortured by the government in the past, it was not based on any of the enumerated grounds listed in 8 U.S.C. § 1101(a)(42)(A). In his view, the Iraqi authorities did not torture Namo due to his political opinions.  Similarly, while there was a warrant for his arrest issued by the government, it was not based on Namo's political opinions, and for that reason, he did not fear future persecution as defined by the statute.  The immigration judge noted, "[t]he mere existence of a generalized political motive underlying a group's actions is insufficient to establish persecution on account of political opinion or any of the other categories identified in the statute."  Oral Decision of the Immigration Judge, January 14, 2002, at 7.  Therefore, the immigration judge did not consider Namo to be a refugee as defined by 8 U.S.C. § 1158(b).

Substantial evidence supports the finding that the Namos are not entitled to asylum.  In coming to his decision, the immigration judge determined that it was important that Namo did not identify himself as associated with a particular political faction and never openly expressed an opinion that was antithetical to the interests of the government.  The judge concluded that Namo's refusal to cooperate with the government, rather than a particular political belief, triggered the reprisals that he suffered.  Furthermore, the immigration judge took note of the fact that the Namos were able to secure travel documents and leave Iraq with relative ease.

Because these facts do not support the granting of asylum, they also are insufficient to meet the higher standard of withholding of removal. *See* 8 C.F.R. 208.16(b).

Namo also raised a claim under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.[1] Protection under the CAT is given in the form of withholding of removal. 8 C.F.R. § 208.16(c). To prevail on such a claim, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.16(c)(2). A court is instructed to look at all relevant evidence that relates to the possibility of future torture, including: (i) evidence of past torture inflicted on the applicant; (ii) evidence that the applicant could relocate to a part of the country where he is likely not to be tortured; (iii) evidence of gross, flagrant or mass violations of human rights within the country to which the applicant will be removed; and, (iv) other relevant information about the country to which the applicant will be removed. 8 C.F.R. § 208.16(c)(3). An applicant must show that if he is returned to his country of origin, he would be subjected to an act of torture, as defined in 8 C.F.R. § 208.18(a). 8 C.F.R. § 208.16(c)(1).

The immigration judge determined that Namo failed to show evidence that he deserved protection under Article 3 of the CAT. The judge held that Namo did not meet his burden of demonstrating that it was more likely than not that he would be tortured if removed to Iraq, within the meaning of 8 C.F.R. §§ 208.16(c) and 208.18(a). The judge noted that "'specific grounds must exist that indicate he individually would be personally at risk.'" Oral Decision of the Immigration Judge, January 14, 2002, at 10 (quoting *Matter of S-V*, Int. Dec. 3430 (BIA 2000)). He also pointed out that a "'consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his or her return to that country.'" *Id.* The immigration judge concluded that Namo had not demonstrated that he would be personally subject to torture, and thus denied his request for withholding of removal under the CAT.

Namo testified that, because he fled Iraq without having completed a government project, there was a warrant outstanding for his arrest. According to Namo, people in Iraq were executed for such crimes. However, the immigration judge ignored, without explanation, the arrest warrant and the torture that Namo suffered at the hands of the Iraqi government when he concluded that Namo had not demonstrated that there were specific grounds to indicate that he was at risk for torture upon removal. When analyzing whether it is more likely than not that a petitioner will be tortured upon removal, the testimony of the petitioner himself may be sufficient. 8 C.F.R. § 208.16(c)(2). Furthermore, a court should consider evidence of past torture inflicted on the petitioner, along with a history of systemic abuse within the nation. 8 C.F.R. § 208.16(c)(3). When Namo's testimony about past torture and the arrest warrant are considered, one must conclude that he met his burden of establishing that it is more likely than not that he would be tortured if removed to Iraq based on the record before this court. *See* 8 U.S.C. § 1252(b)(4)(B).

---

[1] Article 3 states:

> 1. No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

> 2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

While the Namos are entitled to relief under the CAT based on the administrative record, we recognize that the situation in Iraq has changed due to the demise of the regime of Saddam Hussein. This court may take judicial notice of changed circumstances. *Ivezaj v. INS*, 84 F.3d 215, 219 (6th Cir. 1996). We note that *Ivezaj* was based on former section 8 U.S.C. § 1105a(a)(4) (1995)(repealed), which said that review was to "be determined solely upon the administrative record upon which the deportation order is based." Nonetheless, we held that it was appropriate for us to take judicial notice of changed circumstances. *Ivezaj* 84 F.3d at 219. The section that replaced 8 U.S.C. § 1105a(a)(4), 8 U.S.C. § 1252(b)(4)(A), contains essentially the same language as § 1105a, and restricts the review of the court of appeals to the "administrative record on which the order of removal is based." Accordingly, we see no reason to stray from the reasoning in *Ivezaj*.

In light of the regime change in Iraq, we remand this case to the BIA in order that it may expand the record in order to determine whether, in light of the changed circumstances in that country, it is more likely than not that Namo would be subject to torture upon his return to Iraq.

## III.

For the foregoing reasons, the decision of the immigration judge is **affirmed** in part and **reversed** in part and the cause is **remanded** to the BIA for further proceedings consistent with this opinion.