**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0062n.06**
**Filed: January 24, 2007**

**No. 06-3006**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Alban Dashi; Anila Dashi, | ) | |
| | ) | |
| Petitioners, | ) | ON PETITION FOR REVIEW |
| | ) | OF DECISION OF BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| Alberto Gonzales, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

**BEFORE:      SUHRHEINRICH, SUTTON, and MCKEAGUE, Circuit Judges.**

**McKeague, Circuit Judge.** Petitioners Alban and Anila Dashi seek review of a decision of the Board of Immigration Appeals affirming an immigration judge's denial of Petitioners' asylum claim and other relief from removal. For the reasons provided below, we AFFIRM the orders of the Board of Immigration Appeals.

## I. BACKGROUND

Petitioners, Alban and Anila Dashi, are natives of Albania. They claim that they are a married couple, although the Immigration Judge ("IJ") noted that Anila testified that they married in 1992, an assertion that conflicted with their asylum application, which stated that the date of marriage was 1997. Alban claims that around 1997 he inherited a pharmaceutical factory that

was worth around $7 million.  Apparently, title to the factory was contested by Fatos Pustina, the brother-in-law of a Socialist Party official, and a lawsuit commenced.

In their brief to this court, Petitioners claim that they suffered a number of instances of mistreatment in Albania:  (1) threats by Pustina's body guards directing Alban to stay away from court; (2) Alban's house being sprayed with bullets from an automatic weapon; (3) Alban being arrested and beaten in "yet another attempt to intimidate him because his next Court date was less than 2 weeks away"; (4) threats being directed at Petitioners' daughter; and (5) Anila being punched in the stomach by one of the men that had threatened their daughter on the day before Alban was to appear in court.

Petitioners claim that they left Albania on March 27, 2000, with Alban arriving in the United States on or about November 14, 2000, and Anila arriving on or about March 6, 2001. Alban claimed that he came to the United States "only for to [sic] escape." JA at 83.  He claims that he was a member of the Democratic Party, although he "mostly . . . financed funds." JA at 60.  Petitioners were served with Notices to Appear on October 12, 2001, alleging removability for entry without valid documents pursuant to section 237(a)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(a)(A).  They conceded removability and requested relief in the form of asylum pursuant to section 208 of the INA, withholding of removal pursuant to section 241(b)(3) of the INA, and withholding of removal pursuant to the United Nations Convention Against Torture, 8 C.F.R. § 1208.16.

The IJ denied relief to Petitioners after conducting a hearing on June 15, 2004.  He concluded that Petitioners were not credible, that they "failed miserably" in demonstrating a

well-founded fear of future persecution, and that they have not suffered past persecution. JA at 51. Furthermore, the IJ concluded that even if they had established such persecution, "country conditions [in Albania] have changed remarkably since they left." JA at 51. In a per curiam decision issued on December 1, 2005, the Bureau of Immigration Appeals ("BIA") affirmed, concluding that (1) Petitioners failed to establish that the IJ's credibility determination was clearly erroneous and (2) even if it did credit Petitioners' testimony, the IJ correctly concluded that Alban did not demonstrate that he faces a clear probability of persecution or torture in Albania.

Petitioners appeal, essentially interweaving two arguments: (1) the IJ's credibility determination was improper and (2) the IJ erred in finding that Petitioners did not qualify as refugees.

## II. ANALYSIS

### A. Standard of Review

This court has held that where the BIA adopts the reasoning of the IJ, it will review the decision of the IJ directly to determine whether the BIA's decision should be upheld on appeal. *Amir v. Gonzales*, 467 F.3d 921, 924 (6th Cir. 2006) (citation omitted). The decision of the IJ only needs to be supported by substantial evidence. *Namo v. Gonzales*, 401 F.3d 453, 456 (6th Cir. 2005). The substantial evidence standard requires this court to uphold the IJ's decision so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," and to reverse only if it determines that the evidence compels a different result. *Shehu v. Gonzales*, 443 F.3d 435, 437 (6th Cir. 2006) (quoting *INS v. Elias-Zacarias*, 502

U.S. 478, 481 (1992)). This court has recognized that the substantial evidence standard is a deferential one. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998).

The Attorney General may grant asylum to an alien if the Attorney General determines that the alien is a refugee. 8 U.S.C. § 1158(b)(1); *Namo*, 401 F.3d at 456. A refugee is any person who is outside of the country of such person's nationality or last habitual residence and who is unable or unwilling to return to that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42); *Rreshpja v. Gonzales*, 420 F.3d 551, 554 (6th Cir. 2005). The alien has the burden of proof to show that he or she is a refugee. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004).

If the asylum applicant demonstrates that he has been subjected to past persecution, a rebuttable presumption is thereby created of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *Namo*, 401 F.3d at 456. A fundamental change in circumstances in the applicant's country of origin such that the applicant can no longer be said to have a well-founded fear of persecution, however, results in the asylum application being denied. 8 C.F.R. § 208.13(b)(1)(i)(A); *Namo*, 401 F.3d at 456. Otherwise, an applicant can obtain asylum on the basis of a fear of future persecution only by demonstrating that his fear is genuine and that a reasonable person in his situation would have the similar fear. *Namo*, 401 F.3d at 456 (citation omitted).

An asylum application in removal proceedings is deemed to automatically include a withholding of removal request. 8 C.F.R. § 1208.3(b). An applicant will be granted withholding

of removal if he demonstrates "a clear probability of persecution" by presenting evidence that shows that should he return to his native country, "it is more likely than not that [he] would be subject to persecution." *INS v. Stevic*, 467 U.S. 407, 424 (1984). Because this standard is stricter than that applicable to asylum applications, if an applicant is not eligible for asylum, he necessarily fails to satisfy the standard for withholding of removal. *Yu v. Ashcroft*, 364 F.3d 700, 703 n.3 (6th Cir. 2004). Likewise, under the Convention Against Torture, the applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

## B. Credibility Determination

Substantial evidence supports the IJ's conclusion that "nothing [Petitioners] have said can be relied on as being truth." JA at 51. Indeed, the record is replete with inconsistencies. Petitioners' asylum application and the statement they attached to that application stated that they left Albania on March 27, 2000, and Anila testified that they had their passports with them when they left. Yet their passports indicate that they left Albania seven months later, on October 26, 2000. This court has held that submission of fraudulent documents to prove a central element of an asylum claim "creates serious doubts regarding the applicant's overall credibility." *Sterkaj v. Gonzales*, 439 F.3d 273, 277 (6th Cir. 2006) (citations omitted). To the extent that an asylum applicant's identity and when he or she leaves a country are relevant to whether he or she was the victim of persecution and the extent of that persecution, the fraudulent statements here are central to the asylum claim and therefore support the IJ's decision under *Sterkaj*.

Other instances in the record demonstrate that the evidence does not "compel a different result" regarding Petitioners' credibility. In connection with the aforementioned incident regarding Anila being physically assaulted by the men that had threatened Petitioners' daughter, the statement in support of Petitioners' asylum application stated that "she was hit with a fist in her stomach, and she fell down unconsciously [sic]." JA at 128. Anila likewise testified that "I had a punch in my stomach." JA at 95. However, Alban did not testify that the source of Anila's assault was a punch; rather, he claimed that the men shot at Anila with a revolver.

Alban also testified in connection with this incident that his wife had a miscarriage, and Petitioners' statement in support of their asylum application states that their doctor told Anila "that she could not have kids any more." JA at 128. However, Petitioners later had another child after they arrived in the United States, yet their asylum application omitted the existence of this child. This omission further supports the IJ's credibility determination, as this court has held that "omissions may form the basis of an adverse credibility determination, provided that they are substantially related to the asylum claim." *Shkabari v. Gonzales*, 427 F.3d 324, 329 (6th Cir. 2005) (quoting *Liti v. Gonzales*, 411 F.3d 631, 638-39 (6th Cir. 2005)). This omission is substantially related to the asylum claim because it constituted an attempt on the part of Petitioners to embellish their persecution claim by intensifying the severity of the assault.

Petitioners quote extensively from the Ninth Circuit, contending that minor inconsistencies in dates cannot form the basis of an adverse credibility ruling. As stated above, analysis of the law of this court dictates otherwise. Moreover, Petitioners fail to address the fact that the IJ identified other inconsistencies among their testimony, asylum application, and

statement in support of that application, all of which undermined their credibility, in addition to the inconsistencies in dates.

Petitioners also apparently attempt to support their credibility argument by claiming that they provided what there was available to corroborate their claims. This simply is not true. The IJ noted, inter alia, that (1) Petitioners did not produce either the papers showing that they had a proprietary right to the pharmaceutical factory nor the letter threatening their daughter, even though Alban testified that both documents are currently in Petitioners' former home, a home next to which their uncle lives and to which he has access; (2) Petitioners did not produce anything from the property dispute, notwithstanding the fact that they contend they still have a lawyer who seemingly could corroborate their claim; and (3) Petitioners purport that Anila's mother was a witness to the assault, yet they obtained no corroborative evidence from her. The IJ also noted that Petitioners did not provide any reasonable explanation for the absence of such evidence. Accordingly, Petitioners' claim that what was available to corroborate was provided is not convincing, and this lack of corroboration supports denial of the petition. *See Liti*, 411 F.3d at 640. This is especially true because the weaker the asylum applicant's testimony, as is the case here, the greater the need for corroborative evidence. *See Amir*, 467 F.3d at 926.

Under the law of this circuit, the aforesaid inconsistencies provide more than enough support for the IJ's determination that Petitioners lacked credibility. The evidence demonstrates that the credibility determination was "supported by reasonable, substantial, and probative evidence on the record considered as a whole," and there certainly is not evidence that compels a different result.

## C. Refugee Status

### 1. Past Persecution

Substantial evidence supports the IJ's determination that, even assuming Petitioners were credible, they were not the victims of past persecution because any mistreatment they suffered was not a result of a political dispute, but rather was a result of the "private dispute about property." JA at 34. Indeed, the fact statement of Petitioners' own brief supports this conclusion.

Petitioners state that following the first court appearance in connection with the property dispute, "Pustina's body guards threatened [Alban] to stay away from Court," and because of these threats, he missed the next three court dates. Petitioners' Br. 4. Petitioners next claim that "[s]hortly thereafter," their home was "sprayed with bullets from an automatic weapon," again implying that this act was in retaliation for Alban's court appearance or an attempt to intimidate him into not appearing again. *Id.* Alban also claims that he was arrested and beaten and that he "knew that this was yet another attempt to intimidate him because his next Court date was less than 2 weeks away." *Id.* Finally, the incident in which Alban and Anila's daughter was threatened and Anila was assaulted occurred just before Alban's court date of January 12, 2000. The IJ accordingly properly concluded that this was not evidence supporting Petitioners' refugee status, as it did not arise from persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42).

### 2. Future Persecution

The IJ concluded that even if Petitioners were credible and established past persecution, a fundamental change in circumstances has occurred in Albania so that they would not be entitled to a rebuttable presumption of future persecution. The IJ cited extensively the United States Department of State Country Report for Albania, authored in February 2004, noting, inter alia, that in the last year there were no political killings, no reports of politically motivated disappearances, no reports of political prisoners, and under today's circumstances, "very few people will have credible claims to persecution." JA at 38-40. Accordingly, the IJ concluded that the record does not reflect that the Democratic Party, of which Alban claimed to be a member, is being persecuted in Albania today.

Petitioners essentially claim that the State Department report is incorrect, calling it "highly suspect." They also contend that the United States brushes aside human rights violations in order to have good relations with countries such as Albania. Finally, Petitioners selectively quote the report's statements that Albania's "human rights record remained poor in some areas," that "police occasionally arbitrarily arrested and detained persons," and that corruption existed in the legal profession.

Such claims will not prevent a finding by this court that the IJ's conclusion is supported by substantial evidence. First, this court has held that such reports "are generally the best source of information on conditions in foreign nations," and therefore, "the IJ's reliance on these reports is supportable." *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004). Second, Petitioners make no allegation that they would be subject to the small pockets of abuse still present in Albania according to the State Department report. Accordingly, nothing in the record nor in Petitioners'

brief leads this court to conclude that that the evidence compels a different result, and the IJ

correctly denied Petitioners' asylum application on the grounds that "they have failed miserably"

in demonstrating past or future persecution.

## D. Petitioners' Remaining Claims

Petitioners' claim of withholding of removal contains the same factors as an asylum

application, although the former claim requires a higher probability of persecution. *Catellano-*

*Chacon v. INS*, 341 F.3d 533, 545, 552 (6th Cir. 2003). Accordingly, because Petitioners'

asylum application fails, so must this other claim. *See Namo*, 401 F.3d at 456-57 (failure to meet

the asylum standard precludes eligibility for withholding of removal). And for many of the

reasons stated above, as well as the fact that Petitioners have not separately pursued their

Convention Against Torture Claim, we also reject that claim.

## III. CONCLUSION

For the foregoing reasons, the panel AFFIRMS the orders of the BIA.