**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0389n.06
Filed: June 12, 2007

**No. 06-3646**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Arsen Selimi, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | OF DECISION OF BOARD OF |
| | ) | IMMIGRATION APPEALS |
| Alberto Gonzales, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

**BEFORE:**   **GIBBONS and McKEAGUE, Circuit Judges; and BERTELSMAN, District Judge.**[*]

**McKeague, Circuit Judge.**  Petitioner Arsen Selimi seeks review of a decision of the Board of Immigration Appeals ("BIA") affirming an immigration judge's denial of Petitioner's asylum claim and other relief from removal.  On appeal, Petitioner claims that the Immigration Judge ("IJ") erred in concluding (1) that Petitioner was not credible and that his application was not sufficiently corroborated and (2) that Petitioner did not meet his burden of demonstrating that he had suffered past persecution and that he has a well-founded fear of future persecution.  For the reasons stated below, we AFFIRM the order of the BIA.

**I.  BACKGROUND**

---

[*] The Honorable William O. Bertelsman, Senior Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

Petitioner was born in 1963, and he is a native and citizen of Albania. He first entered the United States as an immigrant in December 1997. He has apparently traveled between Albania and the United States several times since his initial entry, as he reports having returned to Albania six times between 1997 and 2004. In February 2001, he was convicted in Michigan state court of domestic violence and stalking. He committed these crimes against his wife. On September 22, 2002, the former Immigration and Naturalization Service began removal proceedings against him, issuing a Notice to Appear ("Notice") in which he was charged with being removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(i), which renders aliens deportable if they are convicted of a crime of domestic violence, stalking, child abuse, child neglect, or child abandonment. He was served with the Notice on October 16, 2002. On January 31, 2004, he filed an application for asylum, withholding of removal, and protection under the Convention Against Torture.

On January 14, 2005, a merits hearing was held in Petitioner's removal proceedings. At the hearing, Petitioner testified as his only witness. He conceded removability, and the IJ found him removable. He testified that he had been a member of the Democratic Party since 1991, in which he "had duties like secretary" and that he had suffered various instances of ill treatment due to this membership. J.A. at 99. He claimed that in March 1997, approximately 200 people attacked him in a produce warehouse where he worked, taking fruits and vegetables. He also testified that in August 1997, he was awakened by the firing of a machine gun, and he and his brother later found that shots had been fired at his car and house. He testified that he was celebrating inside his house in January 2004 when he again heard bullets being fired, and he later

found "that there were actually signs of bullets in the walls." J.A. at 109-10. A few days prior to that incident, he received a letter "stat[ing] that you have to leave Albania at once or otherwise we're going to kidnap you and we're going to kill him." J.A. at 110-13. Finally, he testified on cross-examination that he was twice detained in jail and beaten.

Petitioner's requests for relief were denied. First, the IJ held that Petitioner's asylum application must be denied because he did not demonstrate by clear and convincing evidence that his application was filed within one year of his last arrival in the United States. Even if it had been filed on time, the IJ concluded that he would have denied the application on the merits. The IJ stated that "in the Court's view, [Petitioner] made up this complete story and nothing of it is true," J.A. at 158, and that Petitioner "has corroborated nothing," J.A. at 163. In so concluding, the IJ noted that (1) Petitioner used different names despite stating in his application that he never did so; (2) although Petitioner testified that he recounted "all the bad things" that happened to him in Albania during the hearing, other incidents were listed in his application; (3) Petitioner did not "keep his story straight" about his military involvement; and (4) Petitioner failed to provide any reasonable explanation for the lack of corroborating evidence. J.A. at 162-76. Finally, the IJ noted that Petitioner's testimony was unsupported by State Department reports on Albania.

Petitioner appealed to the BIA on February 3, 2005. The BIA affirmed in a per curiam decision dated April 20, 2006. The BIA first stated that it agreed that Petitioner failed to establish by clear and convincing evidence that his asylum application was timely filed. The BIA then noted that even if Petitioner had met his burden regarding timeliness, the application still

would have been denied because he "should have provided reasonably available corroborative evidence in light of the discrepancies in his claim." J.A. at 207. Yet even if he had produced such evidence, the BIA stated that "the events described by [Petitioner] do not establish an objectively reasonable fear of future persecution." J.A. at 207. Accordingly, his withholding of removal claim, which requires a higher burden of proof, also failed; furthermore, Petitioner failed to demonstrate a clear probability of torture upon removal to Albania.

On May 12, 2006, Petitioner filed a timely petition for review with this Court. On appeal, Petitioner only assigns error with respect to the asylum and withholding of removal claims.

## II. ANALYSIS

### A. Standard of Review

"When the Board summarily affirms a portion of the decision of an immigration judge without discussing the relevant issues in-depth, we review the immigration judge's decision as the final agency decision." *Sarr v. Gonzales*, ___ F.3d ___, 2007 WL 1146465, at *3 (6th Cir. 2007). The findings of fact, including credibility determinations, of an IJ only need be supported by substantial evidence. *Hassan v. Gonzales*, 403 F.3d 429, 434 (6th Cir. 2005). The substantial evidence standard requires this Court to uphold the IJ's decision so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," and to reverse only if it determines that the evidence compels a different result. *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). The substantial evidence standards is a deferential one. *Dashi v. Gonzales*, No. 06-3006, 2007 WL

177915, at *2 (6th Cir. Jan. 24, 2007) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)).

**B. Asylum**

This Court has held that it is barred from reviewing asylum applications denied for untimeliness when the appeal seeks review of discretionary or factual questions, yet it will review constitutional claims or matters of statutory interpretation. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). This case falls into the former category. Indeed, Petitioner devotes his entire brief on appeal to contending that the IJ and BIA erred in their credibility determinations and that he has demonstrated both past persecution and a well-founded fear of persecution. Accordingly, he does not even bother to mention the finding of lack of timeliness, and he certainly does not raise a constitutional or statutory interpretation claim with respect to timeliness. Thus, we are barred from reviewing the denial of Petitioner's asylum application.

**C. Withholding of Removal**

An applicant will be granted withholding of removal if he demonstrates a "clear probability that his [] life would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion" should he return to his native country. *Ben Hamida v. Gonzales*, 478 F.3d 734, 741 (6th Cir. 2007).

On appeal, Petitioner claims that his asylum application and trial testimony were credible and sufficiently corroborated. He asserts that he "submitted all of the exhibits and documents that he could under the circumstances" and that the IJ and BIA "based their decisions largely upon irrelevant and immaterial inconsistencies." Petitioner's Br. 18. He also claims that he has

demonstrated past persecution and a well-founded fear of future persecution should he be forced

to return to Albania, relying on his Democratic Party membership and various instances of

alleged persecution, including the 1991 beatings and jail confinements, the 1997 attack on his

place of employment, the 1997 and 2004 attacks on his house and car, and the 2004 threatening

letter that he received. Although Petitioner only contends that these incidents establish past

persecution and a well-founded fear of future persecution, he apparently also believes that they

constitute the proof necessary to establish his withholding of removal claim.

Substantial evidence supports the IJ's finding that Petitioner was not credible. First,

Petitioner claimed during cross-examination that he had testified as to "all the problems that [he]

had in Albania." J.A. at 115-16. Yet during his direct testimony, he never testified regarding the

two overnight jail detentions and beatings that he reported in his asylum application.

Additionally, he omitted from his asylum application that he served in the Communist-controlled

military, something he only admitted during cross-examination, notwithstanding the fact that he

earlier testified that (1) he knew everything that was in his asylum application and (2) there was

nothing in the application that needed to be corrected, as all of its contents were true.

Furthermore, he stated in his asylum application that he never used any other names, a contention

that he reiterated while under oath at the merits hearing. Yet after an extended exchange on

cross-examination that included the production of records showing that he changed his last name,

he finally admitted that he used the name Arsen Mydini from 1992 to 1996.

These examples, which, respectively, (1) undermine Petitioner's claims that mistreatment

ever occurred, (2) create a question as to whether he was actually a political target, due to his

prior military service, and (3) demonstrate a willingness to lie under oath, are certainly not merely "irrelevant and immaterial inconsistencies"; rather, they are central to Petitioner's claims for relief. Furthermore, the adverse credibility determination is supported by the fact that he, as discussed below, did not provide reasonably available corroborating evidence. *See Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004). Accordingly, it cannot be said that the evidence regarding credibility compels a different result. *Ramaj*, 466 F.3d at 527.

This Court has held that although corroboration is not required for a credible asylum applicant, the absence of reasonably available corroborating evidence can lead to the finding that the petitioner has failed to meet his burden of proof, even if the petitioner is credible. *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005). "The alien's own testimony can be sufficient to support an application for asylum *where the testimony is believable, consistent, and sufficiently detailed* to provide a plausible and coherent account on the basis for his fear." *Pilica*, 388 F.3d at 954 (emphasis added). Furthermore, this Court has emphasized that where it is reasonable to expect corroborating evidence, such evidence should be provided, and the absence of it can lead to a finding that an applicant has failed to meet his burden of proof. *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004).

The above authority compels the result that the IJ did not err in concluding that Petitioner should have provided reasonably available corroborative evidence and that he failed to meet his burden in the absence of that evidence. Indeed, corroborating evidence was necessary in the instant case because he was not a credible asylum applicant and because, as noted by the IJ, his testimony was inconsistent with the State Department reports on Albania. Petitioner complained

that corroborating evidence was not reasonably available because although he admitted that he had family in Albania, "it's really hard [for them] to bring me these documents," and that "[i]f [my brother] mails these documents he's still scared because the police might obtain these documents." J.A. at 102. Petitioner also testified that in Albania only the government has access to fax machines.

The IJ properly rejected these explanations and concluded that corroborating evidence was reasonably available. Indeed, Petitioner admitted that both a "little blue membership book" proving his Democratic Party affiliation and the threatening letter he claims to have received in 2004 are currently located in Albania. J.A. at 102. Also, Petitioner offered nothing but his bare assertions with respect to the police controlling the mails, the government having exclusive access to fax machines in Albania, and the difficulty of his family bringing the documents to the United States. Moreover, when asked on cross-examination why he did not ask his family living in Albania to mail the documents or otherwise send them to him, he admitted that "[t]o say the truth I never thought of it." J.A. at 138. Additionally, he admitted that the testimony of his family could have been taken from the embassy or that sensitive documents could have been included in a diplomatic pouch and sent to the United States to be given to the Immigration Court. Accordingly, it is reasonable to expect corroborating evidence, and the absence of it in this case compels the conclusion that the court did not err in concluding that Petitioner failed to meet his burden of proof. *Dorosh*, 398 F.3d at 382.[1]

---

[1] Although Petitioner relies heavily on *In re Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987), that case is unhelpful to his appeal. Indeed, he cites that case for the proposition that "[t]he alien's

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the order of the BIA.

---

own testimony may in some cases be the only evidence available, and it can suffice where the testimony is believable, consistent and sufficiently detailed to provide a plausible and coherent account of the basis of his fear." *Id.* at 445.  In light of the foregoing discussion, *Mogharrabi* is inapplicable to the instant case.  Indeed, not only has Petitioner admitted that corroborating evidence was available, but his testimony is neither believable nor consistent.