NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0386n.06
Filed: June 27, 2008

## No. 07-4003

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| TIMOTHE ALOGNON and AMEZANDO ADAKO, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | ON PETITION FOR REVIEW FROM |
| ) | A FINAL ORDER OF THE BOARD |
| ) | OF IMMIGRATION APPEALS |
| MICHAEL B. MUKASEY, United States Attorney ) | |
| General, ) | |
| ) | |
| Respondent. | |

---

Before: SILER and COLE, Circuit Judges; and CLELAND, District Judge.[*]

**SILER**, Circuit Judge. Timothe Alognon and Amezando Adako petition this court for review of the Board of Immigration Appeals' ("BIA") denial of their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Alognon and Adako argue that the Immigration Judge's ("IJ") adverse credibility finding was unsupported by the record, and they ask this court to overrule the credibility finding and remand to the agency for further proceedings. We **DENY** the petition.

## BACKGROUND

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

Alognon and Adako are husband and wife. Alognon is a native and citizen of Niger. Adako is a native and citizen of Togo. At their asylum hearing, Alognon testified that he was persecuted and tortured in Niger due to his relationship to the former President of Niger, whom he referred to as his uncle. He testified that he was arrested, detained, and tortured three times between April and June 1999 by the state police. Alognon further testified that after he fled the country, his wife, children, and mother were the victims of persecution and violence. Adako testified to her husband's arrests as well as the violence experienced by their family after Alognon left the country. They introduced several documents, including medical records and family correspondence, to corroborate their claims.

The IJ denied Alognon's applications for asylum, withholding of removal, and CAT relief. The IJ found that Alognon and Adako lacked credibility and did not provide reasonably available corroboration for their claims. The IJ then addressed the merits of Alognon's asylum application and concluded that he had failed to meet his burden of proving a reasonable fear of persecution, citing a 2004 State Department Country Report which described the current conditions in Niger as having no politically motivated killings, no political prisoners, and allowing demonstrations by opposition parties. The BIA summarily affirmed the denial of relief without a separate opinion.

**DISCUSSION**

Where the BIA affirms the decision of the IJ without issuing a separate opinion, we review the decision of the IJ directly. *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007) (citing *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005)). We review the IJ's findings of fact for substantial evidence. *Id.* Under this deferential standard, "the test is not whether this Court might have decided

differently but whether this Court is compelled to conclude that the [IJ] erred." *Id.* at 405-06

(quoting *Dorosh v. Ashcroft*, 398 F.3d 379, 383 (6th Cir. 2004)).

We also review whether the IJ's credibility finding was supported by substantial evidence

in the record. *Liti v. Gonzales*, 411F.3d 631, 637 (6th Cir. 2005). Although the standard of review

is deferential, the adverse credibility finding "must be supported by specific reasons" within the

record. *Id.* Additionally, the "'adverse credibility finding must be based on issues that go to the

heart of the applicant's claim,' and cannot be based on irrelevant inconsistencies." *Mapouya*, 487

F.3d at 406-07 (quoting *Liti*, 411F.3d at 637).

In this case, the IJ cited specific reasons for his adverse credibility finding. Alognon and

Adako challenge that determination on the basis that any omissions or inconsistencies were the result

of cultural inhibitions and a limited understanding of English in preparing their first asylum

applications.[1] However, the IJ listed eleven specific omissions and inconsistencies in the record that

go to the heart of the Petitioners' claim. Among these inconsistencies, the IJ noted that in Alognon's

amended application he claimed he was the victim of electric shock treatment during his third arrest,

but he failed to include any mention of such treatment during that arrest on his direct examination.

It was not until his cross-examination by the government that Alognon brought up electrical shocks,

despite a thorough description of his third arrest and detention on direct examination. The IJ further

noted that Alognon failed to include in his testimony that his house was under surveillance or that

the police delivered a summons for his arrest to his house, though both facts were included in his

---

[1]Alognon's second asylum application was prepared with the assistance of counsel.

amended asylum application. Also cited by the IJ was the discrepancy between Alognon and Adako's testimony and their supporting documents and applications regarding the arrest of Alognon's mother. Although both Alognon and Adako testified that Alognon's mother was arrested, neither his mother's statement nor his children's statement described such an arrest. Both of the Petitioners' original asylum applications also fail to mention any such arrest. Given these specific discrepancies, the IJ's adverse credibility determination is supported by substantial evidence.

Alognon and Adako also argue that they met the burden of proof to establish their eligibility for asylum. To qualify for asylum, an applicant must show that "he suffered past persecution or has a well-founded fear of future persecution." *Berri v. Gonzales*, 468 F.3d 390, 396 (6th Cir. 2006). Even assuming the Petitioners' claims to be credible, the IJ found that Adako presented no evidence as to why she could not return to her home country of Togo. The IJ further noted that her claim that she could not return to Niger was contradicted by her own travels in and out of that country. Although Alognon, if deemed credible, presented some evidence of past persecution, the government provided evidence to rebut the corresponding presumption of future persecution. A fundamental change in circumstances in a country can rebut the presumption of future persecution. *See Dashi v. Gonzales*, 214 F. App'x 581, 586-87 (6th Cir. 2007). In finding that the Petitioners did not satisfy their burden of proof, the IJ cited a 2004 State Department Country Report that described Niger as having no political killings, no political prisoners, and government approval of public protests. These reports are generally considered the best source of information on present conditions in foreign countries, and it is proper for an IJ to rely on such reports in making his finding. *See id.* at 587. Given the Petitioners' lack of evidence to refute the State Department Report, we are not

compelled to conclude that the IJ erred in finding the Petitioners failed to meet their burden of proof. Because the Petitioners failed to meet the burden of proof for asylum, they also failed to meet the burden for withholding of removal. *See Berri*, 468 F.3d at 397. Similarly, the Petitioners failed to establish their entitlement to CAT protection.

**PETITION DENIED.**