NOT RECOMMENDED FOR PUBLICATION

File Name: 10a0116n.06

No. 08-4020

FILED

**Feb 22, 2010**

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MAMADOU DIALLO,

    Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

    Respondent.

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION
APPEALS

————————————————————/        OPINION

BEFORE:    SILER, MOORE, and CLAY, Circuit Judges.

    **CLAY, Circuit Judge.** Petitioner Mamadou Diallo petitions this Court for review of a final order of removal issued on September 30, 2008 by the Board of Immigration Appeals ("BIA"). The Board affirmed an Immigration Judge's ("IJ") November 16, 2005 decision, which found Petitioner removable as charged and denied his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons set forth below, we **DISMISS** the Petition for Review insofar as it seeks review of the denial of asylum and in all other respects, **DENY** the Petition for Review.

## I. STATEMENT OF THE FACTS

### A.    Factual Background

Petitioner Mamadou Diallo is a native and citizen of Mauritania. He was born on January 12, 1974 and is a black member of the Fulani ethnic group. Diallo is married and has no children. His father died in 1987 and his mother and sister were deported to Senegal in 1989.

At his immigration hearing, Diallo testified that while at school on April 28, 1989, a group of white Moor soldiers entered his classroom and arrested fifteen students, including himself. Diallo stated that he was fifteen years old at the time and was held in a military camp for one month. During captivity, Diallo asserts that he was mistreated—he was beaten, doused with cold water, beaten on his chest, and forced to perform farm labor. Diallo also stated that he was handcuffed and forced to wear leg irons while being repeatedly insulted.

Petitioner testified that he escaped from the camp for one week, but was subsequently re-arrested, badly beaten, and taken back to jail. Diallo said he was taken back to the same camp, where he remained for two months. He stated that during this time, he was mistreated and tortured. Specifically, he was forced to stand on hot stones and was beaten and kicked until he was bleeding.

Diallo testified that he escaped again after two months and eventually crossed the river into Senegal. He returned to Mauritania once to search for his mother and sisters, and learned that his mother had been deported to Senegal. Diallo claims he was subsequently arrested again by the white Moor soldiers in his hometown of Haire Galere. Diallo stated that this time, he was arrested along with 20 other people and taken to the main prison in Babiba, Mauritania. He was again beaten, handcuffed, and restrained with leg irons. This time, contends Diallo, he was held captive for four years, forced to clean bathrooms and perform other similar tasks as a "chore boy."

Petitioner testified that he once again escaped and fled to Senegal, where he was reunited with his family. He lived illegally in Senegal for a few years, then moved on to Mali and then to Burkina Faso. Diallo claims he subsequently fled to the United States using a fraudulent passport and a plane ticket, both of which were in the name "Amath Lom." Petitioner contends that he entered the United States on October 29, 1997. Diallo testified that upon his arrival, the immigration officer looked at his passport and handed it back to him without asking any questions about the purpose and length of his stay in the United States. He stated that since he fled to the United States, the white Moors have confiscated his family farm in Mauritania. Diallo also testified that he believes he would be killed if he returned to Mauritania today.

Contrary to his testimony, Petitioner failed to list these arrests on his asylum application. Moreover, the content of his initial asylum interview is disputed. According to the interviewer's notes, Diallo gave an entirely different account of events leading to his entry into the United States. Specifically, according to the interviewer's notes, Diallo stated that he was approached by a white Moor man and two boys on the street. A struggle ensued between Diallo and one of the boys and the boy tried to stab Diallo. Diallo claimed he stabbed the boy in self-defense and that the man chased Diallo with a sword. As a result, stated Petitioner, he feared persecution in Mauritania because he had injured the boy. During his testimony, however, Diallo expressly denied the occurrence with the white Moor man and two boys noted during his asylum interview. Additionally, the asylum interview notes indicate that Diallo claimed during the interview that he was forced to serve as a "chore boy" for one week, instead of four years. Moreover, he testified that he attended

school in Mauritania from 1980 to 1989, but his asylum application listed these dates as 1989 to 1994.

**B.     Procedural History**

Diallo filed an application for asylum and withholding of removal on November 18, 1997. After an interview, the Immigration and Naturalization Service ("INS") declined to grant Diallo's application and on April 27, 2001, it served him with a Notice to Appear ("NTA"), charging him with removability, pursuant to Section 237(a)(1)(A) of the Immigration and Nationality Act ("INA"), as an alien admitted to the United States who was not in possession of a valid visa or other documentation allowing him to cross the border. Diallo conceded removability at a Master Calendar Hearing on August 2, 2001.

A hearing was held via video conference on October 20, 2005. The IJ denied all of Diallo's claims for relief and ordered him to return to Mauritania. Diallo appealed to the BIA, which affirmed the IJ's decision. Diallo subsequently petitioned this Court for review.

## II.  DISCUSSION

**A.     Standard of Review**

When, as in this case, the Board issues its own opinion, the Court reviews the BIA's decision. *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008). The Court must decide this petition based on the administrative record. *See* 8 U.S.C. 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."). The Court reviews *de novo* all legal determinations made by the BIA and affords substantial deference to the BIA's interpretation of the INA and accompanying regulations. *Alhaj v. Holder*, 576 F.3d 533, 537

(6th Cir. 2009). Factual findings must be sustained if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)) (internal quotation marks omitted). This Court may not reverse the BIA's determination merely because it would have decided the matter differently. *Alhaj*, 576 F.3d at 537. The Court must reverse, however, if the evidence presented by Petitioner "not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)).

Adverse credibility findings are findings of fact reviewed under the substantial evidence standard. *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007); *Yu v. Ashcroft*, 364 F.3d 700, 703 & n.2 (6th Cir. 2003). Such findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Although an adverse credibility finding is given substantial deference, the finding must be supported by specific reasons and must be based on issues that go to the heart of the applicant's claim, rather than "irrelevant inconsistenc[ies]." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 n.7, 619 n.2 (6th Cir. 2004)). If a discrepancy cannot be viewed as an attempt by the applicant to enhance his claims of persecution, then it has no bearing on credibility. *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005).

**B.     Asylum**

Aliens must "demonstrate[ ] by clear and convincing evidence that [their] application [for asylum] has been filed within 1 year after the date of the alien's arrival in the United States." 8

U.S.C. § 1158(a)(2)(B).[1]  Pursuant to 8 U.S.C. § 1158(a)(3), "[n]o court shall have jurisdiction to review any determination of the Attorney General under [8 U.S.C. § 1158(a)(2)]."  This Court has held that 8 U.S.C. § 1158(a)(3) "bar[s] our review of asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction."  *Huang v. Mukasey*, 523 F.3d 640, 650 (6th Cir. 2008) (quoting *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir.2006)) (internal quotation marks omitted).

The BIA affirmed the IJ's finding that Petitioner failed to meet his burden of demonstrating by clear and convincing evidence that he filed his asylum application within one year of his arrival in the United States.  Consequently, the denial of Diallo's asylum application was affirmed on that basis.  Petitioner argues that the "clear and convincing evidence" standard was erroneously applied in his case because the record speaks for itself and clearly establishes that he entered the United States on October 29, 1997 and filed his application for asylum on November 18, 1997.  The government asserts that Petitioner has failed to raise a constitutional or statutory construction argument that would allow us to review Diallo's argument regarding untimeliness.

Because Diallo is arguing a factual error, the Court lacks jurisdiction regarding the timeliness of Diallo's asylum application.  Petitioner asserts that he met the "clear and convincing evidence" standard via his testimony and submission of documentation, i.e., a plane ticket indicating his date

---

[1] An exception to this one-year requirement exists where there are "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application."  8 U.S.C. § 1158(a)(2)(D).  No such circumstances exist in this case.

of entry. However, the IJ found Diallo's testimony that an immigration officer looked at his passport and handed it back to him, without asking any questions regarding the purpose and length of Diallo's stay in the United States, to be incredible and the BIA agreed. Moreover, the only evidence of his arrival date that Diallo submitted was a plane ticket in the name of "Amath Lom." Consequently, Diallo failed to establish by clear and convincing evidence that he entered the United States on October 29, 1997. On appeal, Diallo fails to raise a constitutional or statutory construction argument with regard to this finding and instead, argues a factual error. Consequently, 8 U.S.C. § 1158(a)(3) bars our review of the denial of Diallo's asylum application for untimeliness.

Even if, *arguendo*, we were to find that Diallo is raising a constitutional or statutory construction argument, the Court would still lack jurisdiction because Diallo failed to exhaust his claims regarding the timeliness of his asylum application. As this Court has previously stated, the purpose of the exhaustion requirement set forth in 8 U.S.C. § 1252(d)(1) is "(1) to 'ensure that the INS, as the agency responsible for construing and applying the immigration laws and implementing regulations, has had a full opportunity to consider a petitioner's claims,' (2) to 'avoid premature interference with the agency's processes,' and (3) to 'allow the BIA to compile a record which is adequate for judicial review.'" *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004) (citations omitted). Consequently, the Court can only review "claims properly presented to the BIA and considered on their merits." *Ramani*, 378 F.3d at 560.

Petitioner failed in this case to raise a constitutional or statutory construction argument with the BIA regarding the one-year filing requirement. Because Diallo failed to exhaust his

administrative remedies, this Court lacks jurisdiction. An alien who is ineligible for asylum because of the one-year bar may still seek withholding of removal.

### C.       Withholding of Removal

To be eligible for withholding of removal under the INA, an alien must establish "that [his] life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." *Rreshpja v. Gonzales*, 420 F.3d 551, 557 (6th Cir. 2005) (citing 8 U.S.C. § 1231(b)(3)(A)). The alien must establish a "clear probability of persecution." *INS v. Stevic*, 467 U.S. 407, 413 (1984); *Rreshpja*, 420 F.3d at 557. This burden of proof is more stringent than the well-founded fear of persecution required to establish eligibility for asylum. *Rreshpja*, 420 F.3d at 557.

The BIA concluded that Petitioner was not a credible witness, resulting in the denial of his withholding of removal claim. Petitioner contends that the BIA erroneously concluded that he was not a credible witness. Specifically, Diallo argues that: (1) his failure to include certain details in his asylum application does not negate his credibility at the hearing, (2) minor inconsistencies in an asylum applicant's testimony do not negate the applicant's overall credibility, and (3) the documentation he provided was adequate. Petitioner is correct that an asylum applicant need not "provide an exhaustive, detailed list of [all incidents of persecution] in [his] asylum application." *See Liti v. Gonzales*, 411 F.3d 631, 638 (6th Cir. 2005). Petitioner is also correct that minor inconsistencies do not negate his overall credibility—an adverse credibility finding must be based on issues going to the heart of his claim. *Sylla*, 388 F.3d at 926.

Nonetheless, a reasonable adjudicator would not be compelled to conclude that Diallo was credible. *See* 8 U.S.C. § 1252(b)(4)(B). The BIA noted that although Diallo gave detailed testimony regarding the events leading up to his arrival in the United States, he gave a completely different account in his asylum interview. Diallo testified about three separate arrests, periods of mistreatment, and subsequent escapes, but did not mention most of these incidents in his asylum interview. Instead, in his asylum interview, he gave an account of being approached by a white Moor man and two boys on the street. A struggle ensued between Diallo and one of the boys and the boy tried to stab Diallo. Diallo claimed he stabbed the boy in self-defense and that the man chased Diallo with a sword. As a result, stated Petitioner, he feared persecution in Mauritania because he injured the boy.

In contrast, Diallo testified that he suffered multiple arrests in Mauritania because he is a black Fulani, being held captive at times and forced to serve as a "chore boy" for a group of white Moor soldiers. Diallo testified that the longest period of captivity lasted four or five years. In his asylum interview, however, Diallo claimed that he was forced to serve as a "chore boy" for only one week. Also, Diallo expressly denied the occurrence with the white Moor man and two boys noted during his asylum interview.

Petitioner argues that the BIA and the IJ improperly relied upon the asylum interview notes to make a credibility finding. In support of this assertion, he cites *Singh v. Gonzales*, 403 F.3d 1081 (9th Cir. 2005). In *Singh*, the Ninth Circuit concluded that the Assessment to Refer utilized by the IJ in that case "could not, 'standing alone, [be considered] substantial record evidence supporting the IJ's adverse credibility ground.'" *Koulibaly*, 541 F.3d at 620 (quoting *Singh*, 403 F.3d at 1090)

(alteration in original). Here, however, there was not sole reliance on the notes from Diallo's asylum interview when determining that Diallo was incredible. The BIA found that the IJ properly concluded that the asylum interview notes were sufficiently detailed to warrant some weight and noted the IJ's decision to give the notes less weight since the asylum interview was conducted in English, which is not Diallo's native language. The BIA noted that Diallo "provided conflicting statements regarding the alleged mistreatment he experienced in Mauritania" and "failed to mention [prior to hearing testimony, his] multiple arrests or periods of detention."

"Like affirmative inconsistencies, omissions may form the basis of an adverse credibility determination, provided that they are substantially related to the asylum claim." *Liti*, 411 F.3d at 637 (citations omitted). The heart of Diallo's claim is that he was subjected to arrests and mistreatment because he is a black Fulani, yet he failed to list any of the arrests in his application, including the four-year detention he mentioned in his immigration hearing testimony. *See Dashi v. Gonzales*, 214 F. App'x 581, 585 (6th Cir. 2007) ("This omission is substantially related to the asylum claim because it constituted an attempt on the part of Petitioners to embellish their persecution claim by intensifying the severity of the [instances of persecution].").

We are not compelled to conclude that Diallo is credible. As a result, Diallo fails to establish a clear probability that he will be persecuted upon returning to Mauritania. Because of the adverse credibility ruling, Diallo also cannot meet the standard for protection under the CAT. Accordingly, that claim fails as well.

## III.  CONCLUSION

For the reasons stated above, we **DISMISS** the Petition for Review insofar as it seeks review of the denial of asylum and in all other respects, **DENY** the Petition for Review.