**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0323n.06
Filed: May 8, 2007

**No. 06-3581**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Griselda Soto Zacarias, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF DECISION OF BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| Alberto Gonzales, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

**BEFORE:** **KENNEDY, MOORE, and McKEAGUE, Circuit Judges.**

**McKeague, Circuit Judge.** Petitioner Griselda Soto Zacarias appeals from a decision of the Board of Immigration Appeals affirming an immigration judge's denial of Petitioner's claims for asylum and other relief from removal. On appeal, Petitioner claims that the immigration judge's decision was not supported by substantial evidence. Petitioner argues that the record compels the conclusion that she established past persecution as well as a well-founded fear of future persecution. We AFFIRM the orders of the BIA.

**I. BACKGROUND**

Petitioner is a twenty-seven year old native and citizen of Guatemala. She first arrived in the United States on or about June 5, 1992, and she returned on or about September 15, 1994. In

March 1998, she applied for asylum, yet she did not appear at her interview with the Asylum Office.

On April 20, 2001, the Department of Homeland Security served her with a Notice to Appear ("Notice"). The Notice alleged that she was an alien present in the United States who had not been admitted or paroled, in violation of section 212(a)(6)(A)(i) of the Immigration and Nationality Act. In addition, the Notice ordered Petitioner to appear before an immigration judge ("IJ") on June 21, 2001. At a Master Calendar proceeding, Petitioner admitted the allegations contained in the Notice, and she conceded removability.

On October 9, 2001, Petitioner filed a supplemental application for asylum, withholding of removal, and relief under the Convention Against Torture. On November 2, 2004, a hearing on the merits of Petitioner's applications was held before an IJ. At the hearing, Petitioner testified as the sole witness in support of her applications. She asserted that in 1992, when she was fifteen years old, she left Guatemala for the United States because her father told the members of the family that they were in danger. The IJ noted that Petitioner at first testified that her father did not explain why she and her family were in danger, but later on redirect she testified that her father told her that she was in danger because the guerrillas maintained a list of names, which included the names of Petitioner and her family because of Petitioner's father's involvement with the civil patrol.[1]

---

[1] The record demonstrates that Petitioner's testimony regarding this issue largely consists of her agreeing with her attorney's statements:

Q (direct): Okay. Did your father explain to you how you were in danger or why you

Petitioner claimed that in June 1994 she returned to Guatemala because she missed her family, she thought that Guatemala had become more peaceful since she left, and she was planning to be married to a man whom she met in the United States. She testified that she was married on September 8, 1994, and the next day, at approximately 4:00 a.m., she, one of her brothers, her mother, and her father were sleeping at home when they heard people coming in the door. She claimed that she, her mother, and her brother climbed out the window and hid in a ditch approximately one and a half miles from her house. Even though this incident took place in a one-room house and there were ten guerrillas, Petitioner testified that before she climbed out

---

were in danger?
A: No.
Q: Okay. Did you understand who was the cause of that danger? You said it was because of the problems in your country. Was there a specific group in the country that your father said was causing danger for you?
A: Yes.
Q: And what, what group was that?
A: My father was a patrolman and the guerrilla was (indiscernible).
Q: Okay. So you, your father said you were in danger from the guerrillas then?
A: Yes.
. . .
Q (redirect): Ma'am, I want to take you back to the conversation that you had with your father before you came to the United States the first time. When he told you that it was dangerous for you in Guatemala, did he talk to you about this list of names that you're talking about?
A: Yes.
Q: And did he tell you that the guerrillas maintained the list?
A: Yes.
Q: And did he tell you that your family was on that list because he was in the civil patrol?
A: Yes.

J.A. at 198-99, 222.

the window she was able to identify the entrants as guerrillas because they had lamps with them.[2]

Petitioner's father apparently stayed behind to defend the family, and the following morning

Petitioner and her family found him dead outside the house. Petitioner also testified that the

guerrillas destroyed her house that night, setting a fire and breaking windows and doors.

Petitioner next testified that after discussing with her husband what they should do, they

decided to return to the United States. One of Petitioner's brothers as well as her mother decided

---

[2] Petitioner's testimony regarding how she knew the intruders were guerrillas is confusing, and it consists of the following exchanges:

Q (cross-examination): But how do you know they were guerrillas and not criminals?
A: The guerrilla has always existed.
. . .
Q (cross-examination): But how do you know these people were guerrillas?
A: Because they had guns with them and they were wearing military outfits.
Q: How would you know a guerrilla in a military outfit from a military person?
A: I wouldn't know.
. . .
Q (IJ to Petitioner): Right, but did you see the people who were coming in the door?
A: Yes, they were people with guns but it was still dark because it was 4:00 in the morning.
Q: Then how did you see them if it was dark?
A: They had some lamps with them, so we were able to see some.
. . .
Q (IJ to Petitioner): When the Government attorney was asking you questions about how you would know that these people were guerrillas verses [sic] people from the military, you said that you wouldn't know. Why is it that you think that these people were guerrillas?
A: I am sure that they were guerrillas.
Q: Why are you sure?
A: Because they were the only ones who were attacking people without people doing anything.

J.A. at 212-13, 219-20.

to remain in Guatemala, however, where they still live today. Petitioner stated that she is afraid to return to Guatemala because she "imagine[s]" her name is still on a list that the guerrillas maintain, although she admitted on cross-examination that her belief was based on what her father used to tell her and that she does not know the type of list on which her name appears. When the IJ asked Petitioner why, considering the fact that the civil was is over, the guerrillas would still have a list, Petitioner responded that her work opportunities are better in the United States than in Guatemala and that she believes the guerrillas are still there.

The IJ denied Petitioner's applications for relief. Although the IJ found Petitioner to be credible, she found that Petitioner's testimony "was not sufficiently detailed to meet her burden of proving that she either experienced past persecution or that she has a well-founded fear of future persecution if she were to return to Guatemala today." J.A. at 18. The IJ reasoned that she did not have before her enough facts to make a determination that the guerrillas killed Petitioner's father because he was a member of the civil patrol. The IJ also concluded that Petitioner's fear of future persecution if she were to return to Guatemala is speculative. She reasoned that Petitioner offered no corroboration of her claim that the guerrillas still maintain a list with her name on it. Further, the IJ noted that Petitioner's mother and brother have lived in Guatemala since Petitioner's father's death without incident. Finally, the IJ pointed out that Guatemala has experienced significant changes in the last ten years in that the civil war has ended and peace accords have been signed. Accordingly, the IJ found that Petitioner had not met her burden of proof for purposes of asylum and neither had she satisfied her burdens with respect to her other claims for relief.

Petitioner appealed to the Board of Immigration Appeals ("BIA"), which affirmed without opinion. Petitioner then filed this petition for review.

## II. ANALYSIS

### A. Standard of Review and Applicable Law

Where the BIA affirms the decision of the IJ without opinion, this Court reviews the decision of the IJ directly to determine whether the BIA's decision should be upheld on appeal. *Sanusi v. Gonzales*, 474 F.3d 341, 345 (6th Cir. 2007). The IJ's legal determinations are reviewed de novo, and the IJ's factual findings are reviewed under the substantial evidence standard. *Id.*; *Berri v. Gonzales*, 468 F.3d 390, 395 (6th Cir. 2006). The determination of whether an alien qualifies as a refugee will be upheld so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," and the determination will be reversed only if this Court determines that the evidence compels a different result. *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)); *Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005). This Court has characterized the substantial evidence standard as a deferential one. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998).

The Attorney General may grant asylum to an alien if he determines that the alien is a refugee. 8 U.S.C. § 1158(b)(1); *Namo v. Gonzales*, 401 F.3d 453, 456 (6th Cir. 2005). A refugee is any person who is outside of the country of such person's nationality or last habitual residence and who is unable or unwilling to return to that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a

particular social group, or political opinion. 8 U.S.C. § 1101(a)(42); *Berri*, 468 F.3d at 396;

*Rreshpja v. Gonzales*, 420 F.3d 551, 554 (6th Cir. 2005). The alien has the burden of proof to

show that he is a refugee. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004).

If the asylum applicant demonstrates that he has been subjected to past persecution, a

rebuttable presumption is created of a well-founded fear of future persecution. 8 C.F.R. §

208.13(b)(1); *Berri*, 468 F.3d at 396; *Namo*, 401 F.3d at 456. A fundamental change in

circumstances in the applicant's country of origin such that the applicant can no longer be said to

have a well-founded fear of persecution, however, results in the asylum application being denied.

8 C.F.R. § 208.13(b)(1)(i)(A); *Namo*, 401 F.3d at 456. Otherwise, an applicant can obtain

asylum only on the basis of a fear of future persecution by demonstrating that his fear is genuine

and that a reasonable person under his circumstances would have the similar fear. *Berri*, 468

F.3d at 396; *Namo*, 401 F.3d at 456 (citation omitted).

An asylum application in removal proceedings is deemed to automatically include a

withholding of removal request. 8 C.F.R. § 1208.3(b). An applicant will be granted withholding

of removal if he demonstrates "a clear probability of persecution" by presenting evidence that

shows that should he return to his native country, "it is more likely than not that [he] would be

subject to persecution." *INS v. Stevic*, 467 U.S. 407, 424 (1984). Because this standard is stricter

than that applicable to asylum applications, if an applicant is not eligible for asylum, he

necessarily fails to satisfy the standard for withholding of removal. *Yu v. Ashcroft*, 364 F.3d 700,

703 n.3 (6th Cir. 2004). Likewise, under the Convention Against Torture, the applicant must

show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

## B. Asylum

### 1. Past Persecution

On appeal, Petitioner argues that she established past persecution "based on her father's involvement with the civil patrol and the fact that he was killed." Petitioner's Br. 11. She claims that she "would have likely been killed [had she not left Guatemala] as guerrillas were targeting the entire family based on her father's involvement with the civil patrol." *Id.* at 13.

In determining whether an asylum applicant has been subjected to past persecution, this Circuit has held that "[o]ur decisions demonstrate that to create a presumption of a well-founded fear of future persecution, the applicant must establish that he or she was *specifically targeted* by the government for abuse based on a statutorily protected ground and was not merely a victim of indiscriminate mistreatment." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (emphasis added). This Circuit has also quoted with approval a formulation of past persecution from the Seventh Circuit:

> Persecution encompasses more than threats to life or freedom: non-life threatening violence and physical abuse also fall within this category. However, to sustain an asylum application, the conduct must rise above mere harassment. Types of actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture.

*DeLeon v. INS*, 99 F. App'x 597, 599 (6th Cir. 2004) (quoting *Begzatowski v. INS*, 278 F.3d 665, 669 (7th Cir. 2002)).

Regardless of whether Petitioner's father was killed because he was a member of the civil patrol, the evidence does not compel the result that Petitioner was the victim of past persecution under these standards. Indeed, nothing in the record indicates that Petitioner was herself subjected to any of the abuses listed by this Court in *DeLeon*. The only evidence that Petitioner has produced that arguably shows she has been "specifically targeted," *Gilaj*, 408 F.3d at 285, is her claim that she and her family were on some list that the guerrillas maintained. However, this claim as well as her contention that "she would have likely been killed" had she not fled Guatemala because "guerrillas were targeting the entire family based on her father's involvement with the civil patrol" are greatly undermined by the fact that her mother and brother have lived in Guatemala since 1994 without experiencing any mistreatment at the hands of the guerrillas. Furthermore, the fact that ten guerillas broke into Petitioner's family's one-room home at 4:00 a.m. the night her father died, yet Petitioner, her mother, and one of her brothers all escaped through a window is further evidence that if anyone was the target of the guerrillas due to Petitioner's father's association with the civil patrol, it was only her father and not the rest of the family.

This case is analogous to *Akhtar v. Gonzales*, 406 F.3d 399, 405-06 (6th Cir. 2005), in which this Court denied an alien's petition for review of a BIA order affirming an IJ's decision denying the petitioner's asylum application and other claims for relief. In *Akhtar*, the petitioner's father was murdered and his mother was wounded in front of their house in Pakistan due to their involvement in the Mohajir Qaumi Movement (Altaf). *Id.* at 402. This Court held that "[a]lthough certainly relevant to assessing his status as a refugee, [the asylum applicant] cannot

rely solely on the persecution of his family members to qualify for asylum." *Id.* at 403, 406

(quoting *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir. 2003)). Similarly, in the instant case

Petitioner cannot establish past persecution based on what happened to her father, even if he was

killed because he was a member of the civil patrol, and her contention that she and her family

were also targeted simply is unsupported by the facts. Certainly it cannot be said that the

evidence Petitioner presented requires a reversal of the IJ's decision under the deferential

substantial evidence standard. *See Mikhailevitch*, 146 F.3d at 388.

### 2. Future Persecution

Because Petitioner has not demonstrated that she has been subjected to past persecution,

she is not entitled to a rebuttable presumption of a well-founded fear of future persecution. 8

C.F.R. § 208.13(b)(1); *Berri*, 468 F.3d at 396; *Namo*, 401 F.3d at 456. Accordingly, she can

obtain asylum only on the basis of a fear of future persecution by demonstrating that her fear is

genuine and that a reasonable person under her circumstances would have the similar fear. *Berri*,

468 F.3d at 396; *Namo*, 401 F.3d at 456 (citation omitted).

Petitioner argues on appeal that she fears being harmed by the guerrillas based on what

previously happened to her father due to his involvement in the civil patrol. She also claims that

the documents she submitted demonstrate that for the Mayan population in Guatemala, the peace

accords have had very little effect and that serious problems exist. Finally, she argues that

although the guerrillas are not formally at war with the Guatemalan army, they have turned their

weapons on the people.

Petitioner has not established that a reasonable person under these circumstances would have the similar fear of future persecution. The IJ correctly characterized her fear of future persecution as "speculative." J.A. at 20. Indeed, any claim that she would still be targeted by the guerrillas due to her father's involvement with the civil patrol is undermined by the fact that her brother and mother have lived in Guatemala since 1994 with no allegation of mistreatment at the hands of the guerrillas. Although her mother and brother apparently do not live in the city of Guatemala in which the guerrillas attacked Petitioner's father in 1994, Petitioner provides no explanation as to why she could not live in the city in which her mother and brother have been safely living since 1994. Moreover, Petitioner does not even know if the source of her fear is still in existence; indeed, she testified that she is afraid to return to Guatemala because she "imagine[s]" that her name is still on a list.

Furthermore, Petitioner's claims that the Mayan population still faces problems in Guatemala and that the guerrillas have turned their weapons on the people do not help her meet her burden of proof in establishing a well-founded fear of future persecution. In support of her claim regarding the Mayan population, Petitioner only cites incidents "in four areas of the country" that occurred from 1981 through 1983, a decade before her father was attacked. Those incidents do nothing to help her establish a well-founded fear of future persecution more than two decades later. Additionally, a general claim that guerrillas "have turned their arms directly on the people" is insufficient to support an asylum claim, as an asylum applicant must show that he is unable or unwilling to return to that country because of persecution or a well-founded fear of persecution on account of membership in a particular group. *See Berri*, 468 F.3d at 396.

- 11 -

Thus, in addition to failing to show past persecution, Petitioner has also failed to demonstrate a well-founded fear of future persecution on protected grounds. Accordingly, the IJ did not err in connection with the asylum application.

## C. Petitioner's Remaining Claims

Because Petitioner's asylum application fails, so must her claim for withholding of removal. *See Namo*, 401 F.3d at 456-57. And for the reasons stated above, Petitioner has not shown that "it is more likely than not that he or she would be tortured if removed to [Guatemala]"; accordingly, her Convention Against Torture claim also must be denied. 8 C.F.R. § 1208.16(c)(2); *see Dashi v. Gonzales*, 2007 WL 177915, No. 06-3006, at *5 (Jan. 24, 2007).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the orders of the BIA.