NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0451n.06

Case No. 09-3646

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Jul 23, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MUHAMMAD RAZA HUSSAIN and<br>SANA FATIMA, | ) | |
| | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ERIC HOLDER, JR., UNITED STATES | ) | |
| ATTORNEY GENERAL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

_____

BEFORE:  BATCHELDER, Chief Judge; MOORE and COLE, Circuit Judges.


**ALICE M. BATCHELDER, Chief Judge.**  Muhammad Raza Hussain and Sana Fatima

("Hussain" and "Fatima," collectively "Petitioners") petition this court for review of the order of the

Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") denial of their

applications for asylum and withholding of removal under the Immigration and Nationality Act

("INA"), and protection under the Convention Against Torture ("CAT") regulations.  Because we

conclude that the IJ and the BIA had substantial evidence supporting their denial of Petitioners'

asylum request, and because the denial of withholding of removal and CAT protection was not

manifestly contrary to the law, we deny Petitioners' petition for review and affirm the decision of

the BIA.

**I.**

Hussain and Fatima are siblings and citizens of Pakistan. They are also Shia Muslims, a minority religious group in Pakistan. They entered the United States in June 2004 as visitors shortly after a bombing of their mosque in Karachi, Pakistan. Petitioners filed applications for asylum in May 2005, claiming that their lives would be in danger if they were forced to return to Pakistan. Their applications were denied. In February 2007, the Department of Homeland Security charged Petitioners as removable and required their appearance in a consolidated merits hearing before an immigration judge. At their hearing, Petitioners conceded removability but requested asylum, withholding of removal, and relief under the CAT.

Petitioners testified to experiencing discrimination and harassment throughout their lives at the hands of the more dominant Sunni Muslims, specifically a group of Sunnis called Sipah-e-Sahaba. Petitioners both testified that they endured harassment at school, including separation from their classmates and threatening insults. For Fatima, the harassment culminated in the confiscation of her religious ring by a school teacher. The ring was returned two weeks later, however, after Fatima's grandfather urged the school's principal to get involved. Hussain testified that despite the discrimination, he persisted in his studies all the way to college, where the discrimination became too unbearable, and he dropped out.

Petitioners also testified to persecution suffered by their family during large religious gatherings held in their home. During one such religious meeting in 1997, members of Sipah-e-Sahaba gathered outside Petitioners' home carrying canes, yelling, and letting the air out of guests' tires. Petitioners' cousins went to the police asking for help, but the police refused to intervene

2

unless they were given money. The cousins complied, and the confrontation was diffused by the police. While other similar conflicts arose because of Petitioners' religious gatherings, none of them resulted in physical harm or property damage.[1] Hussain, in fact, testified that, on at least one occasion, neighbors sought to shut a gathering down because it was a nuisance to the neighborhood, and not specifically out of religious animus.

According to Fatima, after the gatherings, their family began receiving threatening phone calls and received one threatening letter. The calls and the letter demanded that their family stop organizing religious meetings, and that they leave Karachi or else their children (Hussain and Fatima) would be kidnapped.

Although Petitioners had traveled to the United States several times during the period of their described harassment, until their final trip in 2004, they had never applied for asylum or attempted to stay in the United States beyond their planned visits. One day before their departure to the United States in 2004, a bomb exploded in their mosque, injuring or killing several of their relatives. Subsequent to the blast, neighbors began firing guns in Petitioners' neighborhood. Petitioners' family feared that Sunnis would break into their home and harm them. Because Hussain and Fatima had already obtained tickets and visas for the United States, they fled. According to Fatima, she would not have left Pakistan had circumstances not forced her to escape. Their father and brother, however, remained in Karachi, Pakistan for another year, unharmed.

---

[1]Hussain stated in his Asylum Declaration that the Karachi Police continued to protect them, albeit on condition of compensation, against their neighbors by parking a police vehicle outside of Petitioners' home during their meetings.

At a consolidated merits hearing on October 23, 2007, the IJ denied Petitioners' application for asylum, withholding of removal, and protection under the CAT. The IJ found that the harassment suffered by Petitioners did not constitute past persecution and that they had not demonstrated a well-founded fear of future persecution, as required for a grant of asylum. Finally, the IJ held that because Hussain and Fatima had not demonstrated that they were ineligible for asylum, they also could not meet the higher burden of proof required for withholding of removal or protection under the CAT.

Petitioners appealed the IJ's decision to the BIA. The BIA dismissed their appeal on May 15, 2009, adopting and affirming the IJ's opinion regarding their asylum request, and providing additional explanation for the finding that Petitioners had failed to demonstrate the requisite fear of persecution to justify a grant of asylum. The BIA also held that Hussain and Fatima had waived their withholding of removal and CAT protection claims because they failed to meaningfully challenge the IJ's denial of those claims on appeal.

Petitioners appealed to this court on June 2, 2009. We have jurisdiction to review final orders of the BIA. 8 U.S.C. § 1252(a)(1).

## II.

Where the BIA affirms and adopts the IJ's decision and reasoning, while also adding its own comments, we directly review the IJ's decision and consider the comments of the BIA. *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). The decision to deny Petitioners' request for asylum "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C.

4

§ 1105a(a)(4)).  In other words, the BIA's decision may be reversed only if the record evidence not merely supports, but compels a reversal.  *Id*. n. 1.

The standard of review for withholding of removal and protection under the CAT requires us to "uphold the BIA's determination . . . unless it is manifestly contrary to the law."  *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003) (citing 8 U.S.C. § 1252(b)(4)(B) and (C)) (internal quotation marks omitted); *see id.* at 552.

**III.**

Adjudicating an asylum application requires a two-step inquiry:  (1) whether the applicant qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant merits a favorable exercise of discretion by the Attorney General.  *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998).  8 U.S.C. § 1101(a)(42)(A) defines a "refugee" as "any person . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his or her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."

An asylum applicant bears the burden of establishing that he or she has suffered past persecution or has a well-founded fear of future persecution.  8 C.F.R. § 1208.13(a), (b).  Establishing past persecution gives an applicant a presumptive well-founded fear of future persecution, which the government may rebut.  8 C.F.R. § 1208.13(b)(1).  Absent such a presumption, an alien must show that his or her fear of future persecution is both subjectively genuine and objectively reasonable. *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008).  Plainly stated, the "applicant must . . . 'actually fear that he will be persecuted upon return to his country,

and he must . . . [show] an 'objective situation' under which his fear can be deemed reasonable.'" *Mikhailevitch*, 146 F.3d at 389 (quoting *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994)).

"Persecution" under 8 U.S.C. § 1101(a)(42)(A) "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Id.* at 390. Types of conduct that "might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Gilaj*, 408 F.3d at 285. An applicant must also show that the government specifically targeted him or her for abuse or refused, or was unable, to control others subjecting him or her to abuse. *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009). Mere indiscriminate mistreatment does not qualify as persecution. *Gilaj*, 408 F.3d at 285.

Petitioners argue on appeal that the harassment they described before the IJ constitutes persecution sufficient for an asylum grant and a presumption of a well-founded fear of future persecution when aggregated and viewed in "the overall context of the applicant's situation." *Haider v. Holder*, 595 F.3d 276, 287 (6th Cir. 2010). We hold, however, that substantial evidence supports the IJ's decision as supplemented by the BIA, that the incidents Petitioners describe do not amount to persecution, and that no record evidence compels a reversal.

Petitioners' alleged persecution primarily consists of insults at school, intimidation at religious gatherings, and threats made by phone and letter. Neither Hussain nor Fatima, however, experienced physical harm or significant deprivation of liberty. Fatima's temporary loss of her religious ring was certainly troubling. But such an incident does not qualify as persecution,

6

particularly when the ring was returned only two weeks later. Neither does the bombing constitute persecution as a matter of law because it did not specifically target Hussain and Fatima. *See Gilaj*, 408 F.3d at 285. Furthermore, even if these incidents rose to the level of persecution, there is no evidence that the government was behind them or that it was unwilling to protect Petitioners. Indeed, the Karachi police granted Petitioners several licenses to hold religious gatherings in their home and came to their aid on several occasions, demonstrating the government's willingness to protect them. *See Khalili*, 557 F.3d at 436 (stating that persecution requires "'the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control.'" (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004))).

The record also contains substantial evidence to support the IJ and the BIA's conclusion that Hussain and Fatima did not establish a subjectively genuine or objectively reasonable well-founded fear of future persecution. Petitioners' four return trips to Pakistan from the United States, despite suffering harassment there, negate their claim of subjectively genuine fear of persecution. *See Duhanaj v. Gonzales*, 250 F. App'x 681, 688 (6th Cir. 2007) (holding that an applicant's "actions in returning three times to [his home country] overcame the presumption of a well-founded fear of future persecution."). To be sure, Petitioners' trips to and from Pakistan pre-date the bombing of their mosque, but the bombing was not specific to Petitioners. And the only abuse that *was* specific to Hussain and Fatima is, at best, not attributable to the government.

Petitioners further argue that because their family is known in Pakistan as organizers of Shia religious activities, they are susceptible to a heightened threat of persecution should they be forced to return. But this argument is undermined by the fact that Petitioners' father and brother remained

in Karachi, unharmed, for a year after the bombing. *See Zacarias v. Gonzales*, 232 F. App'x 458, 463 (6th Cir. 2007) (finding the threat of harm against petitioner by guerrillas was undermined because petitioner's close relatives lived in Guatemala for many years without incident). Thus, substantial evidence supports the IJ's determination, as supplemented by the BIA, that Petitioners could not establish a subjectively genuine or objectively reasonable fear of persecution.

## IV.

Petitioners also challenge the IJ's denial of withholding of removal. The requirements for withholding of removal are similar to those for asylum, but the burden on an applicant is heavier. *See Castellano-Chacon*, 341 F.3d at 545 (stating that an alien must show "a greater quantum of proof" for withholding of removal, and our standard of review is merely whether the IJ's decision was manifestly contrary to the law). To qualify for withholding of removal, an applicant must demonstrate that there is a "clear probability" that he or she would be subject to persecution, based on a statutorily protected ground, if he or she were to return to his or her home country. *Id*. The clear probability standard simply asks "whether it is more likely than not that the alien would be subject to persecution" upon removal. *INS v. Stevic*, 467 U.S. 407, 424 (1984).

The BIA held that Petitioners failed to meaningfully challenge the IJ's denial of their withholding claim and had thus waived it. Petitioners disagree. But a finding that Petitioners did not waive this claim would not change the ultimate outcome here. The burden on an applicant seeking withholding of removal is heavier than the burden for demonstrating eligibility for asylum, and where an alien fails to establish past persecution, or a well-founded fear of future persecution, necessary for asylum, he or she is "automatically incapable of qualifying for withholding of

8

removal." *Ndrecaj v. Mukasey*, 522 F.3d 667, 677 (6th Cir. 2008) (citing *Selami v. Gonzales*, 423 F.3d 621, 627 n.2 (6th Cir. 2005)). We agree with the IJ that Petitioners have not carried their burden of demonstrating eligibility for withholding of removal, and hold that the denial of withholding was not manifestly contrary to the law.

## V.

Finally, Petitioners urge us to review the IJ's denial of protection under the CAT. The BIA found this claim waived for failure to meaningfully challenge the IJ's determination on appeal, and we agree. While Petitioners' brief to the BIA requests a reversal of the IJ's decision denying them CAT protection, their brief lacks any clearly articulated challenge to the IJ's rationale for its determination. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) (observing that "it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Petitioners also ask this Court to consider a request for humanitarian asylum. But Petitioners failed to raise such a request — even in a perfunctory manner — before either the IJ or the BIA. We therefore lack jurisdiction to consider it. *See Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) (holding that "only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal.").

## VI.

For the foregoing reasons, we **AFFIRM** the decision of the IJ as supplemented by the BIA and **DENY** the petition for review.