NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0091n.06

No. 09-3338/09-4289

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Feb 10, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MYRON KUKALO, | ) | |
| GANNA KUKALO | ) | |
| | ) | |
| Petitioners–Appellants, | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| v. | ) | THE UNITED STATES BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, Jr., United States | ) | |
| Attorney General | ) | |
| | ) | |
| Respondent–Appellee. | ) | |

Before: MARTIN, GIBBONS, and KETHLEDGE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioners–appellants Myron and Ganna Kukalo appeal a final order of the Board of Immigration Appeals ("BIA"), denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we deny the Kukalos' petition for review.

I.

Myron and Ganna Kukalo (collectively, the "Kukalos") are husband and wife and citizens of the Ukraine. They entered the United States on February 10, 1994, on B-1 non-immigrant visas with authorization to remain for a temporary period not to exceed August 9, 1994. Myron timely filed an application for asylum on October 3, 1994, and Ganna was included on the application as

1

a derivative. On July 28, 2004, the Department of Homeland Security served the Kukalos with Notices to Appear, charging them as subject to removal from the United States pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), and INA § 101(a)(15), 8 U.S.C. § 1101(a)(15). During their removal hearings, both Myron and Ganna conceded removability but requested relief based on asylum, withholding of removal, and CAT.

On May 25, 2007, Immigration Judge William Evans, Jr. ("IJ") heard both Myron and Ganna's application for asylum, withholding of removal, and relief under CAT. Myron testified for both of the Kukalos, and the IJ found Myron's testimony credible. In his testimony Myron revealed several grounds on which he felt the court could find evidence of past persecution as well as a well-founded fear of future persecution. First, a former KGB worker who lived in Myron's village allegedly threatened Myron on three occasions. Myron testified, "He said that people like me should not live in this world," a threat Myron attributed to his "political thinking." Second, Myron testified that because he owned land, he received phone calls and one visit from people he suspected to be associated with mafia groups. These calls largely involved requests for money, but Myron never provided them with any money. Myron suffered no instances of physical harm. Myron also testified that his future in the Ukraine "would be same thing that it was before," indicating a fear of similar threats from the people who had threatened him before.

In addition to Myron's testimony, the Kukalos submitted a letter from a friend in the Ukraine detailing the unrest and violence in the country, the Ukraine Country Reports on Human Rights Practices 2006, and a number of published reports regarding crime and corruption in the Ukraine.

Myron also submitted a written statement with his asylum application discussing the same information offered in his testimony before the IJ.

Based on the testimony and the exhibits, the IJ found that the evidence was insufficient "to demonstrate either past persecution or a well-founded fear of future persecution based on race, religion, nationality, membership in a particular social group or political opinion." The IJ found that the evidence proved Myron had experienced "attempts at extortion" and that the Ukraine was "experiencing some degree of lawlessness," but "[n]either the general condition of lawlessness nor criminal extortion or harassment or threats []rise to the level of persecution." The IJ found no evidence that the Kukalos had been victims of persecution in the past or that the Kukalos had a well-founded fear of persecution in the future "because the only fears expressed by the [Kukalos] are that they will be subject to the same treatment on their return to Ukraine as they've experienced." The IJ found the Kukalos failed to sustain the burden of establishing their claim for asylum and thus necessarily failed to meet the burden for withholding of removal. They also failed to provide any evidence that they would be subject to torture required for their CAT protection claim. Furthermore, the IJ held that the Kukalos failed to establish their eligibility for voluntary departure.

The BIA issued a separate opinion on March 20, 2009, dismissing the Kukalos' appeal of the IJ decision. The BIA rejected Myron's contention that he suffered past persecution or had a well-founded fear of future persecution. The BIA found that "the unfulfilled threats from an individual in his neighborhood and the extortionist demands from persons [Myron] believes were affiliated with the mafia were not severe enough to qualify as persecution." Moreover, the BIA held that because Myron failed to establish eligibility for asylum, he necessarily could not establish withholding of

removal or protection under CAT. The BIA went on to say, "In any event, the respondent has failed to meaningfully appeal the Immigration Judge's denial of his withholding of removal and CAT applications."

## II.

Where the BIA reviewed the IJ's decision *de novo* and issued a separate opinion, we review the BIA's opinion as the final agency determination. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007) (citing *Grijalva v. Gonzalez*, 212 F. App'x 541, 547 (6th Cir. 2007)). Questions of law are reviewed *de novo*, but we give substantial deference to the BIA's interpretations of the Immigration and Nationality Act ("INA") and its accompanying regulations. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). The BIA's factual findings are reviewed under the deferential substantial evidence standard and "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 388 (6th Cir. 1998) (internal quotation marks omitted) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Under this standard, we will reverse if the evidence presented "'not only supports a contrary conclusion, but indeed *compels* it.'" *Id.* (quoting *Klawitter v. I.N.S.*, 970 F.2d 149, 152 (6th Cir. 1992)). We do not reverse simply on the grounds that we would have decided the matter differently. *Koliada v. I.N.S.*, 259 F.3d 482, 486 (6th Cir. 2001). Rather, we look to the evidence presented to determine if "a reasonable factfinder would have to conclude" that the Kukalos established their claims for asylum, withholding of removal, or protection under CAT. *See Elias-Zacarias*, 502 U.S. at 481.

4

III.

An applicant for asylum bears the burden of establishing that he is a "refugee" as defined by the INA. 8 U.S.C. § 1158(b)(1)(B); *Koliada*, 259 F.3d at 486–87. In order to qualify for asylum, the Kukalos must establish that they qualify as refugees "'either because [they have] suffered actual past persecution or because [they have] a well-founded fear of future persecution.'" *Koliada*, 259 F.3d at 487 (quoting 8 C.F.R. § 208.13(a)–(b)).

Establishing that harassment rose to the level of "persecution" is not an easy task. *See Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) ("The numerous decisions rendered by the various panels of this court upon review of BIA decisions on applications for asylum make clear that the conduct on which the application for asylum is based must go beyond what might reasonably be characterized as mere harassment in order to rise to the level of persecution."). Furthermore, demonstrating that the evidence *compels* this court to find that persecution occurred is even more difficult. We conclude that the Kukalos failed to present evidence of such persecution, past or future.

To determine whether past persecution occurred, we evaluate the overall context of the applicant's situation and view the evidence in the aggregate. *Haider v. Holder*, 595 F.3d 276, 287 (6th Cir. 2010) (citing *Gilaj*, 408 F.3d at 285; *Stenaj v. Gonzales*, 227 F. App'x 429, 433 (6th Cir. 2007)). "Persecution must rise above the level of harassment or discrimination without physical punishment, infliction of harm, or significant deprivation of liberty." *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007) (citing *Mikhailevitch*, 146 F.3d at 390). Furthermore, "persecution . . . 'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied

5

by any physical punishment, infliction of harm, or significant deprivation of liberty.'" *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (quoting *Mikhailevitch*, 146 F.3d at 390). In *Haider*, this court noted, "Typically, though, the '[t]ypes of actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Haider*, 595 F.3d at 286–87 (quoting *Zacarias v. Gonzales*, 232 F. App'x 458, 462 (6th Cir. 2007)). Although the court gave no indication that this was an exhaustive list, Myron's factual allegations do not resemble any of these examples, nor do they rise beyond mere harassment. Furthermore, the Kukalos must establish that the previous abuse was as a result of their membership in a protected category, which is only tenuously suggested by the record. *Mohammed*, 507 F.3d at 371.

Myron presented credible testimony of a few instances of threats and requests for money. These encounters do nothing to show that he was "specifically targeted" and not "merely a victim of indiscriminate treatment." *Gilaj*, 408 F.3d at 285. In fact, it appears that these incidents were a result of merely random criminal acts. *See Lumaj v. Gonzales*, 462 F.3d 574, 577–78 (6th Cir. 2006) (noting that because an incident was isolated, with "no evidence . . . that the attack was in any way more than a random criminal act," it was less likely to be sufficient for a finding of persecution). He and Ganna experienced no physical harm or threats of any specific consequence. Because something more is required to prove past persecution, the Kukalos have failed to establish that this court should be compelled to find that they experienced past persecution as a result of their political beliefs. We uphold the decision of the BIA with respect to this prong and find that the Kukalos experienced no past persecution for the purposes of their asylum application.

Because the Kukalos have failed to establish past persecution, they must independently establish a well-founded fear of future persecution. *Id.* at 578. A well-founded fear of future persecution is established by: (1) a fear of persecution in one's home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) a reasonable possibility of suffering persecution should one return; and (3) an unwillingness or inability to return to that country due to the fear. *Pilica*, 388 F.3d at 950. This "well-founded fear" must be both subjectively genuine and objectively reasonable. *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007).

The Kukalos rely on the same evidence to establish their fear of future persecution that laid the unstable foundation for their claim of past persecution. The evidence presented—including a letter from a friend in the Ukraine, the Ukraine Country Reports on Human Rights Practices, a number of published reports regarding crime and corruption in the Ukraine, and a statement written by Myron—offers little more than an impression of general crime and lawlessness. Isolated incidents unrelated to any protected status do not compel us to find that the Kukalos had a well-founded fear of future persecution. We therefore affirm the decision of the BIA to reject the Kukalos' application for asylum because the record does not compel a finding of past persecution or a well-founded fear of future persecution upon their return to the Ukraine.

IV.

The BIA held that Myron "failed to meaningfully appeal the Immigration Judge's denial of his withholding of removal and CAT applications." Furthermore, the BIA determined that "[b]ecause of the respondent's failure to establish eligibility for asylum, he necessarily cannot

7

'satisfy the more onerous burden[s] for withholding of removal [and] . . . the Convention Against Torture."[1]

The BIA did not explain how Myron failed to meaningfully appeal his withholding of removal and CAT protection claims. In the Kukalos' brief in support of their appeal of the IJ's decision, for their claims for withholding of removal and CAT protection, they simply rely on the evidence presented under their claim for asylum, stating "[f]or the reasons set forth herein, Respondents have met the higher standard for withholding of removal . . . . [and] relief under the Convention Against Torture is also warranted." Whether these statements of reliance on earlier arguments present a meaningful appeal is questionable, but answering this question is unnecessary because the evidence fails to compel us to find that Myron was entitled to relief under either withholding of removal or CAT.

To establish a claim for withholding of removal, the petitioner must show "a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica*, 388 F.3d at 951 (citing *I.N.S. v. Stevic*, 467 U.S. 407, 413 (1984)). Because the burden for establishing a claim for withholding of removal is "a more stringent burden than what is required on a claim for

---

[1]As a preliminary matter, family members are not granted derivative status with respect to withholding of removal. Thus we do not review Ganna Kukalo's claim for withholding of removal. *See Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 545 (6th Cir. 2003) ("Unlike an application for asylum, however, a grant of an alien's application for withholding is not a basis for adjustment to legal permanent resident status, family members are not granted derivative status, and it only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country."). Regardless, because her evidence and claims were the same as Myron's, and because we decline to grant Myron's claim, whether derivative status extended to her claims for withholding from removal and CAT protection is irrelevant.

asylum," and because the Kukalos failed to establish their claim for asylum, it follows that the Kukalos "also cannot satisfy the more onerous burden for withholding of removal." *See Kaba v. Mukasey*, 546 F.3d 741, 751 (6th Cir. 2008) (citing and quoting *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005); *Pilica*, 388 F.3d at 951; *Koliada*, 259 F.3d at 489).

The Kukalos similarly fail to meet their heavy burden of proof under CAT. To obtain relief under CAT, the petitioner must prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Pilica*, 388 F.3d at 951 (quoting 8 C.F.R. § 208.16(c)(2)). Although it may be the case that the inability to establish an asylum claim does not necessarily preclude relief under CAT, *see Kamalthas v. I.N.S.*, 251 F.3d 1279, 1293 (9th Cir. 2001), it is not easy to overcome such a barrier. *See, e.g.*, *Liti*, 411 F.3d at 641 ("[B]ecause the Litis failed to establish eligibility for asylum, they also cannot meet the heightened requirements for relief under CAT."). The Kukalos' brief states that they have established that there is a clear probability that Myron would be tortured by the man who previously threatened him, or members of local corrupt organizations upon his return to the Ukraine, but the brief offers no evidence to support such a claim beyond that used to buttress the claim for asylum. Accordingly, this assertion fails to compel us to find that the Kukalos are entitled to relief under CAT.

We affirm the decision of the BIA and deny the Kukalos' claims for withholding of removal and CAT protection.

V.

For the foregoing reasons, we affirm the BIA's decision.