**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0998n.06

No. 13-3343

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 25, 2013
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| GLADIS TAMER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ON PETITION FOR REVIEW |
| | ) FROM THE UNITED STATES |
| ERIC H. HOLDER, JR., Attorney General, | ) BOARD OF IMMIGRATION |
| | ) APPEALS |
| Respondent. | ) |
| | ) |

BEFORE:  McKEAGUE and STRANCH, Circuit Judges; COLLIER, District Judge.[*]

PER CURIAM.  Gladis Tamer petitions this court for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from the denial of her application for asylum and withholding of removal.  We deny the petition for review.

Tamer, a native and citizen of Lebanon, entered the United States on July 30, 2006, as a nonimmigrant visitor for pleasure with authorization to remain for six months.  On January 3, 2009, the Department of Homeland Security served Tamer with a notice to appear before an immigration judge (IJ), charging her with removability under section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted. Tamer admitted the factual allegations set forth in the notice to appear and conceded removability as charged.  On August 18, 2009, Tamer filed an application for asylum, withholding of removal,

_____

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

and protection under the Convention Against Torture (CAT), asserting that Hezbollah and other Muslim terrorist groups have threatened her family because they are Maronite Christians and because her now ex-husband was a member of the Lebanese Forces.

Tamer and her daughter, Ornella Machalany, testified at the hearing before the IJ. At the conclusion of their testimony, the IJ granted Tamer's request to keep the record open to obtain additional corroborating documents. After considering the new documents, the IJ denied Tamer's application for asylum, withholding of removal, and CAT protection and ordered her removal to Lebanon. The IJ found that Tamer was not credible, that her asylum application was untimely, that she failed to demonstrate a well-founded fear of future persecution even if her application were timely, and that she also failed to satisfy her burden with respect to withholding of removal and CAT protection.

Tamer appealed the IJ's decision to the BIA, but failed to file a brief after obtaining an extension of time to do so. Dismissing the appeal, the BIA determined that the IJ's adverse credibility finding was not clearly erroneous, that Tamer neither identified any clear error in the IJ's findings nor demonstrated that she met her burden as to the timeliness of her asylum application, that there was no error in the IJ's determination that she failed to meet her burden to establish eligibility for asylum or withholding of removal, and that she failed to challenge the denial of CAT protection.

In this petition for review, Tamer challenges only the adverse credibility determination. The Government argues that Tamer did not exhaust her credibility claim because she did not file a brief before the BIA. While it may be arguable that a failure to provide briefing constitutes a failure to exhaust, Tamer's appeal to the BIA claimed that the immigration judge "failed to find [her] credible despite uncontroverted testimony" consistent with her application and supporting documents, and

the BIA reviewed the credibility claim. *See Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) ("[C]laims properly presented to the BIA and considered on their merits can be reviewed by this court."); *see also Khalili v. Holder*, 557 F.3d 429, 433 (6th Cir. 2009) (considering exhaustion requirement waived when BIA addressed claim despite no arguments raised by the petitioner). We assume that the credibility claim has been exhausted and consider it here.

Where, as here, "the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili*, 557 at 435. "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id*. We review factual findings, including credibility determinations, for substantial evidence, reversing "only if any reasonable adjudicator would be compelled to conclude to the contrary." *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011).

Tamer contends that the adverse credibility determination should be reversed because the IJ held her to an "inappropriately stringent standard," quoting *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003), which pre-dates the REAL ID Act of 2005. Under the REAL ID Act, the trier of fact bases credibility determinations on the totality of the circumstances and all relevant factors, including:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

According to Tamer, the IJ clearly erred in finding that her testimony was inconsistent with her daughter's testimony. Although Tamer testified that her ex-husband was a leader in the Lebanese Forces, her daughter testified that she did not know at the time that her father was in an organized fighting group and that she never saw him in a uniform. Her daughter also testified that Tamer told her within a week of their arrival that they were going to stay in the United States. This conflicts with Tamer's statements that she initially planned to return to Lebanon and that, after a month in the United States, she decided to stay when her mother advised her to do so because "they are asking around about you."

Tamer also argues that the IJ based the adverse credibility determination on the erroneous conclusion that she did not remember the date of her divorce. Tamer initially testified that her divorce took place in August 2009. Tamer later clarified that she was divorced in North Carolina in April 2009 and in her church in August 2009. Reviewing the exhibits, the IJ addressed the North Carolina judgment for absolute divorce as follows: "The only thing that the Court will say is this document indicates that she was divorced before she claims she was divorced, and that raises some issue as to whether or not her husband might have entered into a polygamous marriage. But, again, this particular document does not really say one thing or another about the respondent's application for withholding or asylum." The IJ's statement indicates that he misunderstood Tamer's testimony about the date of her divorce, but does not reflect that the adverse credibility determination was based on that misunderstanding.

Tamer requested additional time to obtain corroborating documents, including statements from her ex-husband about his activities in the Lebanese Forces and from her relatives about burning

their identification cards. Tamer now claims that those documents were not reasonably available. *See* 8 U.S.C. § 1158(b)(1)(B)(ii). According to Tamer, her daughter asked Tamer's ex-husband to provide a statement, but he refused. But as the IJ pointed out, Tamer failed to provide a statement from her daughter regarding her ex-husband's refusal. Tamer offered no explanation for not being able to provide a statement regarding the burning of identification cards.

Tamer contends that both she and her daughter provided a reasonable explanation as to why her sister was unable to testify at the hearing—her sister's recent surgery. But Tamer gave no reason why her sister, with whom she lives, failed to testify at the reconvened hearing six months later or to provide a statement.

At the reconvened hearing, Tamer testified that her new documents were hand-delivered by her cousin while he was visiting from Lebanon. After the government's attorney pointed out that one document was dated four days after she claimed to have received it, Tamer admitted that the documents were faxed to her. Tamer now asserts that this was a "small misunderstanding." The record supports the IJ's finding that Tamer's inconsistent testimony, along with her failure to produce the original documents, further undermined her credibility.

The adverse credibility determination is supported by substantial evidence. As the IJ pointed out, Tamer was at times evasive, refusing to answer the question asked. Tamer's claimed fear of harm was weakened by her return to Lebanon after trips to the United States and France in 2003, 2004, and 2005. *See Hussain v. Holder*, 390 F. App'x 445, 449 (6th Cir. 2010). The IJ also noted that Tamer's claims conflicted with the State Department country reports, which showed that the president of Lebanon is a Maronite Christian and did not reflect any pattern or practice of

persecution based on religion or politics.  Because the record does not compel a contrary conclusion

regarding Tamer's credibility, we deny the petition for review.